ESTHER ANDERSON, Admx., *vs.* CHARLES G. WETTER, Receiver.

Knox.    Opinion December 9, 1907.

*Pleadings.    Amendments.    New Cause of Action.    "Immediate Death Caused by*
*Wrongful Acts."    No Action Therefor at Common Law.    Statute Authorizes*
*Recovery for the Death only.    Rule V of Rules of Court.    9 and 10*
*Victoria 1847, chapter 93.    Statute 1844, chapter 109, section 3;*
*1848, chapter 70; 1855, chapter 161; 1891, chapter 124.*
*R. S., chapter 84, section 10 ; chapter 89, sections 9, 10.*

It is doubtless true that greater liberality than formerly is allowed in the matter of amendments, and that mere technicalities are not viewed with favor.    But it is also true that well established principals and precedents are not to be lightly set aside.    "It will not be wise to depart too far from the established rule of pleading.    Constant departure from these rules will soon result in confusion.    In the end it will be found that justice will be better subserved by adhering to the remedies provided by law than in departing from them."

Amendments in matters of substance may be allowed under Rule V of "Rules of the Supreme Judicial Court," but this rule also provides that " no new count or amendment of a declaration will be allowed, unless it be consistent with the original declaration, and for the same cause of action."

Immediate death caused by wrongful acts was unknown to the common law as a cause of action.    Under the statute of this State passed in 1891 and following Lord Campbell's Act in England (1847), it was made so.    The common law gave to the personal representatives a right of action to recover for conscious suffering up to the time of death, but nothing for the death itself.    The statute does not apply in case of conscious suffering and gives damages only for the death itself which must follow immediately.    The statute did not create a new remedy for an existing cause of action but created a cause itself where none existed before.    When thus created, a new cause of action arose with different parties in interest, different ground of suit, different rule of damages, different application of funds and different period of limitation.

In the case at bar which was an action of tort for causing the death of plaintiff's intestate, the declaration alleged that the suit was brought for the benefit of the estate, that the intestate "died in about three and one half hours," and the amount of the damage claimed was ten thousand dollars. The plaintiff asked leave to amend by substituting for the original declaration a count under Revised Statutes, chapter 89, sections 9 and 10, alleging that the suit was brought for the benefit of the widow and children of the intestate, that death was immediate, and fixing the amount of damages at five thousand dollars.    The amendment was allowed and the defendant excepted.

*Held :*   (1).   That the original declaration was at common law and not under the statute. It did not allege immediate death and it failed to appear either by inference or direct averment, whether the plaintiff's intestate became unconscious from his injuries or endured conscious suffering while he survived.

*(2).*   That the amendment was not properly allowed, because it introduced a new cause of action. It did not set out the same cause of action with fuller statement and in a more perfect form but alleged a new and distinct cause of action, and such amendments are not allowable.

A cause of action is neither the circumstances that occasioned the suit nor the remedy employed, but a legal right of action.

On exceptions by defendant.   Sustained.

Action on the case brought by the plaintiff in her capacity as administratrix of the estate of August Anderson, late of Rockland, deceased, and against the defendant as receiver of William J. Gray and others, owners and operators of a granite quarry, for negligently causing the death of the said August Anderson.

The writ was returnable to and entered at the September term, 1906, of the Supreme Judicial Court, Knox County, and at the same term the defendant demurred to the plaintiff's declaration. Hearing was had on the demurrer at the following January term of said Supreme Judicial Court. The demurrer was sustained and the plaintiff was given leave to amend. The amendment when filed was objected to by the defendant but was allowed by the presiding Justice and thereupon the defendant excepted.

The original declaration in the plaintiff's writ is as follows :

"In a plea of the case ; for that the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray at south Thomaston in the county of Knox on the 24th day of May A. D. 1905, were and for a long time prior thereto had been the owners, operators and occupants of a granite quarry called the High Island Granite Quarry, situated within the limits of South Thomaston and were then and there engaged in quarrying granite in which they employed a large number of men, and it was the duty of the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray to provide suitable tools, machinery, rigging, derricks, ropes and appliances for carrying on said operation of quarrying and hoisting

granite and also a safe and secure place for all their workmen therein employed by them or their superintendent or agents, and the plaintiff avers that on the twenty-fourth day of May A. D. 1905 and for a long time prior thereto the said August Anderson, husband of said plaintiff was in the employ of said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray and on said day aforesaid was legally at work there doing such work about said quarry as ordered by said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray or their superintendent and on the said twenty-fourth day of May A. D. 1905 was ordered by said Wm. Gray, Peter Gray, Alexander Gray and Margaret Gray or their superintendent to take down a derrick and cause it to be moved to another location. And the said August Anderson was on said 24th day of May working at the top of said derrick when the main guy rope parted at the bight of the block causing the derrick to fall throwing the said August Anderson about forty-five feet striking upon his head from which injury occasioned as aforesaid the said August Anderson died in about three and one-half hours after being thrown as aforesaid and striking upon his head.

"And the plaintiff avers that the rope which parted was not a suitable and sufficient rope to be used upon said derrick and was worn, old and rotten, unfit and unsafe to be used upon said derrick of which fact and knowledge the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray had notice, and it was the legal duty of said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray to provide strong and suitable ropes to be used upon said derrick and the plaintiff further avers that on the said 24th day of May aforesaid the said August Anderson was in the exercise of due care in all work performed by him. And the plaintiff avers that the death of said August Anderson was caused by the negligence, fault and wrongful act of said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray in furnishing an insufficient rope which broke because it was worn, old and rotten and unfit for use which fact was known or could have been known had Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray exercised proper care and caution in furnishing proper, strong and safe rope

instead of the rotten one used and furnished by the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray upon said derrick.   Whereby an action hath accrued to have and recover as administratrix of the estate of said August Anderson for the death caused as aforesaid the sum of ten thousand dollars for the benefit of said estate.

"And the plaintiff avers that Charles G. Wetter of Philadelphia in State of Pennsylvania was at the January term of the Supreme Judicial Court held at Rockland on the first Tuesday of January A. D. 1906, duly appointed receiver of the property of said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray in Knox county.   And the plaintiff further says that on the second day of February 1906 that leave was granted by Hon. A. M. Spear one of the Justices of the Supreme Judicial Court to prosecute this suit against Charles G. Wetter, Receiver of the estate of the parties aforesaid, to the damage of the said plaintiff (as she says), the sum of twenty thousand dollars."

The amendment filed and allowed, is as follows:

"In a plea of the case, for that the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray, at South Thomaston in said county of Knox, on the twenty-fourth day of May A. D. 1905, were and for a long time prior thereto had been and were the owners, occupants and in the control, management and operation of a certain granite quarry called the High Island Granite Quarry, situated on High Island and within the limits of said South Thomaston, and were then and there engaged in quarrying granite, in which employment they employed a large number of men; that as incidental to their said operations of their said quarry and for the purposes thereof, to wit, for the purpose of hoisting out blocks of stone from said quarry and moving and changing said blocks of stone when necessary in the operation of said quarry plant, the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray long prior to said twenty-fourth day of May 1905, had erected and owned, controlled, maintained and managed and on said twenty-fourth day of May 1905 continued to own, control, maintain and manage on said quarry plant, a certain wooden derrick of great height, to wit: of the

height of eighty feet, which said derrick was held in place by several wire guys attached to the top of said derrick, thence extending in various directions to the ground, where they were attached; that there was attached at the bottom of said derrick a boom, so called, of great length, to wit: of the length of seventy-five feet; that said boom and derrick were operated by guy ropes, so called, furnished and put in place by said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray, which said wooden derrick, boom, guys and guy ropes were on said twenty-fourth day of May 1905, defective, decayed, out of repair, unsafe and unsuitable in construction and material for the purposes for which they had been erected and for which they were then maintained and operated by said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray, all of which the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray then well knew or ought to have known by the exercise of reasonable care and diligence.

"And the plaintiff avers that on the said twenty-fourth day of May 1905, it was the duty of the said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray, being then as aforesaid the owners of and in control and management of said wooden derrick, booms, guys and guy ropes, to have, keep and maintain the same in a reasonably safe and suitable condition for the protection and safety of all persons rightfully and lawfully using the same for the purposes for which the same were then and there maintained and operated by said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray.

"And the plaintiff further avers that on said twenty-fourth day of May 1905, the said August Anderson was in the employ of said William J. Gray, Peter Gray, Alexander Gray and Margaret Gray, as a laborer at day wages and had been for a long time prior thereto, doing such work about said quarry plant as said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray or their superintendent and agents ordered him to do; that on said twenty-fourth day of May 1905 said August Anderson was ordered by said William J. Gray, Peter Gray, Alexander Gray and Margaret Gray or their superintendent and agents, to take down said derrick and move it to

another location that said August Anderson, in obedience to said orders, was on said twenty-fourth day of May 1905, lawfully at work at the top of said derrick and in the exercise of due care ; that while said August Anderson was so at work and while in the exercise of due care, the main guy rope so furnished and maintained as aforesaid by said Wm. J. Gray, Peter Gray, Alexander Gray, and Margaret Gray, because of its decayed and unsuitable condition as aforesaid, which decayed and unsuitable condition was well known to said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray, or ought to have been known by the exercise of reasonable care and diligence, suddenly broke and parted at the bight of the rope at the block, causing the derrick to fall, and throwing the said August Anderson, while so at work and while in the exercise of due care and diligence and without any fault of said August Anderson, to the ground, eighty feet, where he struck upon his head ; and by reason thereof, he was then and there instantly killed.

"And the plaintiff avers that the death of said August Anderson was caused by the negligence, fault and wrongful act of said William Gray, Peter Gray, Alexander Gray and Margaret Gray, as aforesaid, and not by any fault or negligence of August Anderson.

"Whereby and by reason whereof, an action has accrued to the plaintiff as administratrix, aforesaid, to recover damages to the amount of five thousand dollars, for the benefit of the widow and Elsa M. Anderson, aged four years and Augustus A. Anderson, aged one year, the two children of said August Anderson, by virtue of the statutes in such case made and provided.

"And the plaintiff avers that she is the widow, and that said Elsa M. Anderson and Augustus A. Anderson are the children of said August Anderson ; that she is unable to perform much manual labor on account of sickness and the tender ages of said children ; that she and said children were at the time of the death of said August Anderson and for a long time prior thereto, had been entirely dependent upon said August Anderson for their maintenance and support, and have otherwise suffered great pecuniary damages by reason of and resulting from the death of said August Anderson as aforesaid.

"And the plaintiff avers and says that she is the administratrix of the estate of said August Anderson, and that letters of administration have been duly issued to her, the plaintiff, by the Judge of Probate for the said county of Knox and State of Maine; that she is therefore the personal representative of the estate of said August Anderson deceased.

"And the plaintiff further avers that said Charles G. Wetter of Philadelphia in the State of Pennsylvania, was at the January term of the Supreme Judicial Court held at Rockland in said county of Knox, duly appointed Receiver of the property of said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray, within and for the State of Maine, and that he has duly qualified as said Receiver and is in control and management of the said property of said Wm. J. Gray, Peter Gray, Alexander Gray and Margaret Gray.

"And the plaintiff further avers and says that on the second day of February 1906 on a petition therefor, leave was granted to her the plaintiff, by Hon. A. M. Spear, one of the Justices of the Supreme Judicial Court for said State of Maine, to prosecute this suit against said Charles G. Wetter, Receiver of the estate as aforesaid."

Sections 9 and 10 of chapter 89 of the Revised Statutes, read as follows:

"Sec. 9. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as shall amount to a felony."

"Sec. 10. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of his widow, if no children, and of the children, if no widow, and if both, then of her and them equally, and, if neither,

of his heirs. The jury may give such damages as they shall deem a fair and just compensation, not exceeding five thousand dollars, with reference to the pecuniary injuries resulting from such death to the persons for whose benefit such action is brought, provided, that such action shall be commenced within two years after the death of such person."

The gist of the case appears in the opinion.

*L. M. Staples and M. A. Johnson,* for plaintiff.

*Arthur S. Littlefield,* for defendant.

SITTING: WHITEHOUSE, STROUT, PEABODY, CORNISH, KING, JJ.

CORNISH, J. This is an action against the defendant as Receiver of William J. Gray and others, owners and operators of a granite quarry, for negligently causing the death of August Anderson, plaintiff's intestate. To the original declaration in the writ, the defendant demurred, his demurrer was sustained and the plaintiff was given leave to amend. The amendment when filed was objected to by the defendant but allowed by the presiding Justice and on defendant's exceptions to this ruling, the case comes before this court.

Two questions are involved: First, was the original declaration intended to be made under the common law? Second, if so, can the writ be amended by substituting for the original declaration a declaration under Revised Statutes, chapter 89, sections 9 and 10.

The original declaration was inartificially drawn, but was manifestly designed to set out a cause of action at common law. In any event, it did not embody the essential elements to bring it within the statutory declaration. It alleges, not immediate death, nor death without recovering consciousness, but that the intestate "died in about three and one half hours after being thrown as aforesaid and striking upon his head." A similar allegation in *Sawyer* v. *Perry,* 88 Maine, 42, was held to describe a common law right of action. "It fails to appear, either by inference or direct averment, whether he became unconscious from his injuries or endured conscious suffering while he survived." *Conley* v. *Gas Light Co.,* 96 Maine, 281.

The amount of damages claimed in the writ is ten thousand dollars, while the limit in the statutory action is five thousand dollars, and the action is brought in the name of the administratrix for the benefit of the estate and not for the exclusive benefit of the widow and children as under the statute.

Our conclusion, therefore, on the first point is that the original declaration was framed under the common law.

That being so, the question arises whether the amendment, clearly introducing a cause of action under the statute, was allowable. All the points above referred to as keeping the original declaration outside the statutory requirements have been changed in the amendment to meet those requirements.

Amendments in matters of form are allowed under Revised Statutes, chapter 84, sec. 10, and in matters of substance under Rule V, of this court. But this rule also provides that "no new count or amendment of a declaration will be allowed, unless it be consistent with the original declaration, and for the same cause of action." It is familiar law that an amendment introducing a new cause of action is not allowable. *Bangor, Old Town and Milford R. R. Co.* v. *Smith,* 49 Maine, 9; *Milliken* v. *Whitehouse,* 49 Maine, 527; *Cooper* v. *Waldron,* 50 Maine, 80; *Farmer* v. *Portland,* 63 Maine, 46; *Lawry* v. *Lawry,* 88 Maine, 482. The existence of the rule is admitted, its application is sometimes difficult.

What is meant by the term "cause of action?" Some confusion has arisen from a misapprehension of its exact significance.

It does not refer to the facts and circumstances which may be introduced in evidence and because of whose occurrence the action has resulted. Those might be spoken of as causes for action but they are not properly speaking a cause of action.

The term is clearly and discriminatingly defined by Mr. Pomeroy, as follows:

"The primary right belonging to plaintiff and the corresponding duty belonging to defendant, and the delict or wrong done by the defendant, consisting in a breach of such primary right or duty, constitute a cause of action." Pomeroy Rem., sec. 452.

So too, causes of action are often confounded with remedies. This is clearly brought out in the case of *Emory* v. *Hazard Powder Co.*, 22 S. C. 476, 53 Am. Rep. 730, where the court say : "Causes of action are very often confounded with remedies ; and being regarded as synonymous, the rules established with reference to the one are sometimes supposed to be applicable to the other. This however is a mistaken view of the subject, as a brief investigation will show. A cause of action may be defined in general terms to be a legal right, invaded without justification or sufficient excuse. Upon such invasion a cause of action arises, which entitles the party injured to some relief, by the application of such remedies as the laws may afford. But the cause of action, and the remedy sought are entirely different matters. The one precedes, and it is true, gives rise to the other, but they are separate and distinct from each other, and are governed by different rules and principles. It is true, that the motive which prompts the action is a desire for relief, and to obtain this relief is the object of the action ; but this is not the legal sense of the phrase "cause of action." On the contrary, that sense is as stated above ; i. e. a breach of one's legal rights."

A cause of action is therefore neither the circumstances that occasioned the suit, nor the remedy employed, but a legal right of action. The adjectives good and bad cannot, strictly speaking, be applied to it. "If a person have a legal right to sue, he has a good (that is legally sufficient) cause of action. If he have no legal right to sue, he has not merely a bad cause of action, but no cause, so that good cause of action can never mean more than cause of action." *Parker* v. *Enslow*, 102 Ill. 272, 40 Am. Rep. 588.

With this definition in mind that a cause of action is a right of action, let us consider the nature of the proposed amendment. "By the common law no value is put upon human life to be recovered in the way of damages." *Nickerson* v. *Harriman*, 38 Maine, 277 ; *Carey* v. *Berkshire R. R.*, 1 Cush. 475. No cause or right of action exists in case of such wrongful death. This means, not merely that there exists a cause of action which is extinguished or abated by other recognized legal principles, but that no cause or right of action ever arises or exists for such a wrongful act.

Such is the doctrine of the common law under which the original declaration in this writ was framed.

But, following Lord Campbell's Act in England, 9 and 10 Victoria, chap. 93, (1847), in most of the States the common law has been abrogated to a greater or less extent, and by statute a new cause of action has been created.

In this State as early as 1821, an act was passed providing for recovery by indictment for the use of the heirs, in case a life was lost through a defect in a highway for which a town was liable. By chapter 70 of the Public Laws of 1848, a similar provision was enacted with reference to steamboats and railroads, fixing the limit of recovery at $2000, which act was superseded by chapter 161 of the Public Laws of 1855, making the limit $5000.

This provision was held to have been made to obviate the objection to such recovery arising from the long established doctrine of the common law that no action for damage could be sustained for such loss of life. *State* v. *Grand Trunk Railway*, 58 Maine, 176.

This proceeding by indictment continued until 1891 when in chapter 124 of the Public Laws, the Legislature passed an act "To give a right of action for injuries causing death," by a civil suit, brought in the name of the personal representatives, for the benefit of the widow and children or heirs of the deceased, and extending the scope to any person or corporation through whose wrongful act or negligence the death occurred. The passage of this act was held to supersede and abrogate the remedy by indictment. *State* v. *Maine Central R. R. Co.*, 90 Maine, 267. The Act of 1891 is now embodied in Revised Statutes, chapter 89, sections 9 and 10.

The effect of this legislation is apparent. It was not to create a new remedy for an existing cause of action but to create the cause of action itself where none existed before. It was therefore necessarily a new cause of action, a new right of action.

The two causes are inherently distinct, both in their nature and in their results. The statutory cause of action begins where the common law leaves off. The common law gave to the personal representative a right of action to recover for conscious suffering up to the time of death, but nothing for the death itself. The statute

does not apply in case of conscious suffering, and therefore gives no damage for that; but;for the death itself which must follow immediately. The former is brought for the benefit of the estate, the latter for the benefit of the next of kin, and ignores the estate. The rule of damages in the two actions is entirely different, *McKay* v. *New England Dredging Co.*, 92 Maine, 454, and while the amount under the statute is limited to $5000, at common law it is unlimited. The limitation of the common law action is six years, of the statutory action two years. With different parties in interest, different ground of suit, different rule of damages, different application of funds and different period of limitation, can there be any doubt that there is a different and a new cause of action.

In *Sawyer* v. *Perry*, 88 Maine, 42, the court, in discussing the purpose of the statute, say, the object was "not to give a new right of action where ample means of redress already existed, but to supplement the existing law, and give a new right of action in a class of cases where no means of redress before existed."

In *McKay* v. *New England Dredging Co.*, supra, the court say: "The right to any compensation is wholly created by the statute and the amount of the compensation is to be measured solely by the standard prescribed by the statute. At common law, in cases like this there was no right of action in the widow, children or heirs for any compensation. . . . The statute is to be construed as a new statute creating a new right and not as affirming or reviving an ancient right."

Similar statutes have received the same construction in other jurisdictions, where they have been held to be, not remedial in their nature, but creative of a distinctly new and independent right. *Fink* v. *Garman*, 40 Pa. St. 95; *Matz* v. *Chicago & A. R. R. Co.*, 85 Fed. Rep. 180; *Union Pacific Railroad* v. *Wyler*, 158 U. S. 285.

The test as to what constitutes a new cause of action was laid down by Chief Justice Parker in *Ball* v. *Claflin*, 5 Pick. 303, as follows: "The new count, offered under leave to amend, must be consistent with the former count or counts, that is, it must be of the like kind of action, subject to the same plea, and such as might

have been originally joined with the others. It must be for the same cause of action, that is, the subject matter of the new count must be the same as of the old; it must not be for an additional claim or demand, but only a variation of the form of demanding the same thing."

The same court had occasion to apply this test in the recent case of *Brennan* v. *Standard Oil Co.*, 187 Mass. 376, where they held that a count by an administrator for the benefit of the next of kin under the statute, for causing the death of plaintiff's intestate, cannot be joined with a count at common law for conscious suffering of the intestate before his death. This case is precisely in point as showing that the new count is not "consistent with the original declaration" as required by our rule of court. The learned counsel for the plaintiff cites many cases where amendments in matters of substance have been allowed, but a careful examination shows that they were all within their legitimate sphere. They simply contained a fuller statement of the plaintiff's claim as in *Mitchell* v. *Chase*, 87 Maine, 172, where the court found that the plaintiff intended to institute an action under the statute relating to damages by dogs, but failed to set it out in detail; or the amendment was merely additional to the description of the alleged defect as in *Chapman* v. *Nobleboro*, 76 Maine, 427; *Babb* v. *Paper Co.*, 99 Maine, 298, and similar cases. They all come within the rule laid down by this court in *Pullen* v. *Hutchinson*, 25 Maine, 249, and *Annis* v. *Gilmore*, 47 Maine, 152, that "where an intended cause of action is defectively set forth, and yet so as clearly to be distinguished from any other cause of action, in the manner it would be if the declaration was perfect, then the amendment may be properly allowed." In other words, an amendment in the case at bar which would make a fuller statement of the plaintiff's claim at common law would be allowable, but to insert an inconsistent count and a new and entirely different cause of action is a subversion of the rule.

The case falls more nearly within the decision in *Milliken* v. *Whitehouse*, 49 Maine, 527, where the court say "the original count contained nothing that would or could lead to the conclusion, or even the suspicion, that the facts made essential to the mainten-

ance of the action required by sec. 3, chap. 109, of the statute of 1844, were any part of the cause of action, and it does not fall within the provisions of the statute allowing amendments in the discretion of the court." It is further argued that the amendment should be allowed because it is based upon the same facts as the original declaration, and that in that sense the cause of action is the same. This arises from misapprehension as to the meaning of the term "cause of action," before defined. The point is answered by the Supreme Court of the United States in these words: "It is argued, however, that, as all the facts necessary to recovery were averred in the original petition, the subsequent amendment set out no new cause of action in alleging the Kansas statute. If the argument were sound, it would only tend to support the proposition that there was no departure or new cause of action from fact to fact, and would not in the least meet the difficulty caused by the departure from law to law. The most common, if not the invariable, test of departure in law, as settled by the authorities referred to, is a change from the assertion of a cause of action under the common or general law to a reliance upon a statute giving a particular or exceptional right." *Union Pacific Railway* v. *Wyler*, 158 U. S. 285.

It is doubtless true that greater liberality than formerly is allowed in the matter of amendments, and that mere technicalities are not viewed with favor. But it is also true that well established principles and precedents are not to be lightly set aside. "It will not be wise to depart too far from the established rules of pleading. Constant departure from these rules will soon result in confusion. In the end it will be found that justice will be better subserved by adhering to the remedies provided by law than in departing from them." *Lawry* v. *Lawry*, 88 Maine, 482.

Our conclusion therefore is, that the amendment was improperly allowed, and the entry must be,

                                        *Exceptions sustained,*