INHABITANTS OF BAYVILLE VILLAGE CORPORATION

*vs.*

INHABITANTS OF BOOTHBAY HARBOR.

Lincoln.   Opinion December 20, 1912.

*Apportionment.   Assessment.   Distribution.   Demurrer.   Equality.   Improvements.   Municipality.   Policy.   Private and Special Laws, 1911, Chapter 227.   Taxation.*

The issue raised by the defendant's demurrer is to Section 5 of Chapter 227 of the Private and Special Laws of 1911, which provide for the distribution of the taxes when assessed and collected and is as follows: "The town of Boothbay Harbor shall annually pay over to the Treasurer of said Corporation, out of the taxes collected from the inhabitants and estates within the territory of the Bayville Village Corporation aforesaid, a sum equal to sixty per centum of all of the town taxes, exclusive of the State and county tax, collected from said inhabitants and estates."

*Held:*   1.   That inequality of assessment of taxes is necessarily fatal; inequality of distribution is not, provided the purposes be the public welfare.

2.   The method of distribution of the proceeds of such a tax rests in the wise discretion and sound judgment of the Legislature.

3.   If this discretion is unwisely exercised, the remedy is with the people and not with the court.

On exceptions by the defendant.   Exceptions overruled.

This is an action on the case to recover of the defendant town a sum equivalent to sixty per centum of the taxes levied and collected by the defendant Corporation for the year 1911, from the inhabitants and estates of that part of Boothbay Harbor incorporated under the name of Bayville Village Corporation, as authorized by Chapter 227 of the Private and Special Laws of 1911.   The defendant filed a general demurrer, which was overruled by the Justice presiding and the defendant excepted.

The case is stated in the opinion.

*Clement F. Robinson, and George W. Heselton,* for plaintiff.

*James B. Perkins, and Heath & Andrews,* for defendants.

SITTING:   WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, HALEY, JJ.

SPEAR, J.   This is an action based upon Chap. 227 of the Private and Special Laws of 1911, in which the plaintiff seeks to recover of the defendant a sum equivalent to sixty per cent of the taxes levied and collected by the defendant corporation for the year 1911. The defendant filed a general demurrer which raises the decisive questions of law.

Bayville is a seaside resort in the town of Boothbay Harbor occupied by summer residents who desire the enjoyment of certain advantages adapted to their own special comfort, for which they are amply able to pay, and for which it would be inequitable and unjust to tax the residents in other parts of the town, to whom the improvements desired would be of no particular benefit.   In accordance with the long and well settled policy of this State, these residents, in order to secure the enjoyment of these privileges sought a charter, which the Legislature in its discretion granted, incorporating a portion of the town of Boothbay, within certain described limits into a special municipality, called the Bayville Village Corporation.   The charter also prescribes the rights and duties of the corporation, its financial relation to the rest of the town, and declares the administrative rules and regulations by which the taxes shall be apportioned and assessed, collected and distributed.

The defendant raised no question of the propriety of the administrative policy for the regulation and adjustment of the municipal and corporate relations.   Nor under the well settled law in this State is it easy to perceive how any well grounded objections could be suggested.

The issue which the defendant raised under their demurrer is to that section of the special act which provides for the distribution of the taxes when assessed and collected in accordance with the machinery provided in the act.   Section 5 reads: "The town of

Boothbay Harbor shall annually pay over to the treasurer of said corporation out of the taxes collected from the inhabitants and estates within the territory of the Bayville Village Corporation, aforesaid, a sum equal to sixty per centum of all of the town taxes exclusive of the state and county tax, collected from said inhabitants and estates." The objection raised to this section is not that the town of Boothbay Harbor is required to pay to the corporation 60 per cent, but that it is authorized to expend for its own purposes the other forty per cent, a provision which it is contended violates that clause of our Constitution which says that "all taxes upon real estate and personal property assessed by authority of this State shall be apportioned and assessed equally according to the just value thereof." In order to determine the precise application of this contention, it becomes necessary to ascertain the manner in which the tax is apportioned and assessed, from the proceeds of which sixty per cent is to be returned to the village corporation and forty per cent retained for general town purposes. By reading Section 11, it will be seen that this assessment is made by Boothbay Harbor upon all of the property of the town, including Bayville, precisely as if no corporation existed. The valuation and the rate are uniform upon all property. The levy for corporation purposes is immaterial to the issue here raised. It accordingly appears that the apportionment and assessment of the tax is in perfect harmony with the constitutional requirements. This proposition is not, as we understand it, controverted by the defendants. But they contend, notwithstanding this may be true, that the provision for the distribution of the proceeds of the assessment, whereby the town is authorized to retain forty per cent, must result in unequal taxation, and comes within the ban of the constitutional provision. This raises the question: Of what does the inequality consist? Is it in the apportionment and assessment of the taxes? If so, the plaintiff must fail. If in the distribution of the proceeds of the tax, then the plaintiff should prevail. It already appears that the apportionment and assessment of the tax, from the proceeds of which 60 per cent were to be paid to Bayville and 40 per cent retained by the town, were in accord with the constitutional provision requiring that all taxes shall be assessed equally and according to the just

value of the property upon which they are imposed. There was consequently no inequality in the apportionment and assessment of the taxes under the act in question. The only question remaining, therefore, is whether the distribution of the proceeds of the tax thus raised must be made with that strict equality required in the assessment. It is evident from a casual view, if such equality were demanded, that no distribution of the proceeds of a tax could ever be constitutionally made. But we think this question has been fully settled in the recent opinion of *Sawyer* v. *Gilmore,* not yet published, but found in 83 Atl., page 673. This was a bill in equity brought to enjoin the Treasurer of State and his successors in office from collecting a tax assessed under the provision of Chap. 177 of the Public Laws of 1909. The question raised was that this act provided for an unequal distribution of the taxes levied and was consequently a violation of the same constitutional provision invoked by the defendants in the case at bar. In this case the precise issue under consideration was raised, the court stating it as follows: "The first objection is that this act imposes an unequal burden of taxation upon the unorganized townships of the State, because, while the fund is created by the taxation of all the property in such townships as well as upon the property in the cities, towns and plantations, no provision is made for the distribution of any part thereof to such townships, but it is all apportioned among the cities, towns and plantations. The townships are omitted." As four subdivisions of the State were made to contribute to this fund and only three were permitted to share in the financial benefit, it is clearly a case of unequal distribution. The court, nevertheless, say: "This objection, however, is without legal foundation. The Legislature has the right under the Constitution to impose an equal rate of taxation upon all the property in the State including the property in unorganized townships, for the purpose of distributing the proceeds thereof among the cities, towns and plantations for common school purposes."

Another objection was raised, that the method of distribution was unconstitutional because it was made not according to the number of scholars, as in the school mill fund, but one-third according to the number of scholars and two-thirds according to valua-

tion, thus benefiting the cities, and richer towns more than the poorer. Upon the assumption that this method of distribution worked an inequality, the court say: "But that result is not the test of constitutionality. Inequality of assessment is necessarily fatal, inequality of distribution is not, provided the purpose be the public welfare. The method of distribution of the proceeds of such a tax rests in the wise discretion and sound judgment of the Legislature. If this discretion is unwisely exercised, the remedy is with the people, and not with the court." With reference to the general authority of the Legislature, the court in this case further say: "The powers of the Legislature in matters of legislation, broadly speaking, are absolute, except as restricted and limited by the Constitution. As to the executive and judiciary the Constitution measures the extent of their authority, as to the Legislature it measures the limitations upon its authority. . . . It follows, therefore, that a legislative act is to be held constitutional unless a positive restriction or limitation or prohibition is found in the Constitution which renders it invalid." In support of the defendant's contention has been cited *Brewer Brick Co.* v. *Brewer,* 62 Maine, 62, and *Dyer* v. *Farmington Village Corporation,* 70 Maine, 515. The first case involved an exemption of property from taxation, which was clearly a violation of the constitutional provision that all property taxed, etc., shall be apportioned and assessed equally. It requires no further comment to show that the omission to tax certain property is not taxing all property. The latter case, as stated by the court, was one in which "five lots of land may be burdened with a tax from which the remainder of the real estate of the town is exempt," which is also so evident an unequality of assessment as to require no comment. These cases, therefore, cannot be regarded as precedents for a decision in the case at bar.

The court in the Sawyer case said: "Inequality of assessment is necessarily fatal, inequality of distribution is not, provided the purpose be the public welfare." It remains, therefore, to consider whether the act in question comes within the public welfare clause of the Constitution which commands: "That the Legislature shall make and establish all reasonable laws and regulations for the defense and benefit of the people." As has already been seen, legis-

lative powers are not measured by grants, but by limitations. The Legislature represents the sovereign power of the people and is, therefore, limited in the exercise of sumpreme authority, only by the inhibition of the Constitution. The Legislature has a large discretion with reference to its control of municipalities. Municipal corporations are but instruments of government created for political purposes and subject to legislative control. Cooley says: "They are created for convenience, expediency and economy in government, and, in their public capacity, are and must be at all times subject to the control of the State which has imparted to them life, and may at any time deprive them of it." In fact the decisions are so numerous and uniform, conceding the power of the Legislature in its dominion over municipal corporations, including counties and towns, that citations are unnecessary. It may be well, however, to refer to the leading case of *Waterville* v. *County Commissioners*, 59 Maine, 80, and the opinion of a minority of the Justices in 99 Maine, 526, where many of the authorities are collated. These cases tend to illustrate the power of the Legislature in directing the expenditure of moneys, received from taxation, for public purposes.

The question, therefore, recurs whether the special act under consideration was reasonable and beneficial to the community affected. The natural advantages of the coast of Maine offer flattering inducements to non-residents, seeking recreation and rest, to establish permanent summer homes within the State. It has become a matter of common knowledge and statistics, that no factor, in the progress of our social and financial interests, has contributed more to our general prosperity than our summer resorts and game preserves. The people who come here are usually segregated in isolated communities. They often select unimproved lands. Out of waste places they create millions of dollars of taxable property. The increment upon these lands is taxed to its full value, under the law, although they may occupy it but a fraction of the year. The numerous islands along our coast are conspicuous examples of this development and creation of taxable property. It is not infrequent that the tax imposed upon a summer community, and occupying but a small section of a town, exceeds the assessment upon all the

rest of the estates. They demand and are entitled to vast improvements which the municipalities are unable to furnish. In justice and in equity, these communities are entitled to receive back, for the establishment and maintenance of their own public utilities, a part at least, of the money they have paid in taxes. This end is precisely what the act under consideration was calculated to attain.

The Legislature has exercised its discretion as to the amount which, in this particular case, should be paid back, making it a fixed amount, instead of leaving it to the discretion of the selectmen to determine the amount, which might be entirely inadequate, or even nothing.

It may accordingly well be said that the enactment of laws tending to encourage the growth of this kind of enterprise, is both reasonable and beneficial. Upon a careful investigation of the authorities, therefore, we are of the opinion that the act comes within the public welfare clause of the Constitution. Our conclusion is that the demurrer should have been overruled.

*Exceptions overruled.*