ALBERT B. CHASE, ADMINISTRATOR

*vs.*

INHABITANTS OF TOWN OF LITCHFIELD.

Kennebec.        Opinion, January 21, 1936.

*Currier C. Holman,*
*Willard and Willard,* for plaintiff.
*Goodspeed & Fitzpatrick,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J. By his declaration, the plaintiff alleged that the intestate decedent, Albert B. Chase, on August 11, 1934, while in an automobile driven by one Dixon on a State-aid highway in the Town of Litchfield, received injuries, proximately resulting from acts of negligence upon the part of the "municipal officers, the road commissioners and the man having charge of the highway at the authorization of the municipal officers" by not removing or safeguarding against or warning of certain large rocks in and by the highway then under construction, with which rocks the automobile collided and overturned, causing the immediate death of Mr. Chase without conscious suffering. The defendant by general demurrer to the declaration challenged its sufficiency in law. The case now is before this Court on exceptions to the sustaining of the demurrer.

It is to be noted at the outset that this action is not based on the "life lost" clause in our "defective highway" statute (R. S. 1930, Chap. 27, Sec. 94) but rather upon our "general death" statute, (Lord Campbell's Act,) originally enacted in this State in 1891, (Chap. 124, P. L. 1891) and now appearing in R. S. 1930 in Secs. 9 and 10, Chap. 101. Section 9, (originally Section 1 in the first enactment and unchanged since then) reads as follows:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death

shall have been caused under such circumstances as shall amount to a felony."

While much else has been argued, we think that the ruling of the Court below may be justified by consideration and interpretation of the following words in the statute, viz: "the person who, or the corporation which,".

It could not be and is not claimed that at common law there was liability for the death itself. *Nickerson* v. *Harriman*, 38 Me., 277; *Lyons* v. *Woodward*, 49 Me., 29; *State* v. *Grand Trunk Ry. Co. of Canada*, 58 Me., 176; *Frazer* v. *Inhabitants of Lewiston*, 76 Me., 531; *McKay, Admr.* v. *New England Dredging Co.*, 92 Me., 454, 43 A., 29; *Bligh* v. *Biddeford & Saco R. R. Co.*, 94 Me., 499, 48 A., 112; *Anderson, Admx.* v. *Wetter, Receiver*, 103 Me., 257, 69 A., 105; *Perkins, Admr.* v. *Oxford Paper Company*, 104 Me., 109, 71 A., 476; *Hammond, Admx.* v. *L. A. & W. Street Railway*, 106 Me., 209, 76 A., 672; *Curran, Admr.* v. *L. A. & W. St. Ry. Co.*, 112 Me., 96, 90 A., 973; *Danforth, Admr.* v. *Emmons*, 124 Me., 156, 126 A., 821; *Ames, Admr.* v. *Adams*, 128 Me., 174, 146 A., 257.

The purpose of this statute was to make possible recovery for death in certain cases; not all. A *"person"* or *"corporation"* whose "wrongful act, neglect or default" has resulted in death (immediate and without conscious suffering) is by the statute made liable to the personal representative of the deceased, if the act, neglect or default were such as would, if death had not ensued, have entitled the party injured to maintain an action.

This is an action against a town. The statute does not *expressly* make the State or any sub-division of it, as a county, a city, a town, or a plantation, liable. A town may be liable under it only if it be held that the Legislature by use of the words "person" or "corporation" intended to include a town.

Whether or not the word "person" as here used includes a town raises no difficulty.

"Where these two words occur together," ("person" or "corporation") "'corporation' is the only word which can be contended to include a city or town notwithstanding R. L.

c. 8, Sec. 5, cl. 16." *Donohue, Admr.* v. *City of Newburyport,*
211 Mass., 561, 566, 98 N. E., 1081, 1082.

The Massachusetts statute cited corresponds to our rule of
statutory construction that "the word 'person' may include a body
corporate." R. S. 1930, Chap. 1, Sec. 6, Par. XIV.

Did the Legislature intend by the use of the word "corporations"
to include towns?

"New England towns are public corporations and were
either original, constituent parts of the state, or have been
incorporated by the legislatures of the states in which they are
situated. The oldest of them long antedate the states them-
selves to which they belong." *Garland on New England Town
Law,* Page 17.

Corporations "is a word which in our statutes and decisions
has not been used generally to include cities and towns. In a
certain sense they are bodies corporate. But in common speech
it is rarely that a city or town is referred to merely as a cor-
poration. Towns in New England differ in their nature from
trading, manufacturing or public service corporations, and
even from municipal corporations elsewhere. They are created
primarily for political purposes and the convenient adminis-
tration of government. They possess few of the characteristics
which distinguish the ordinary corporation." *Donohue* v.
*Newburyport,* supra, page 566.

"In common parlance, towns, cities and other municipal
organizations are not known as corporations; they are spoken
of not uncommonly by text writers in the law as quasi corpo-
rations." *Linehan* v. *City of Cambridge,* 109 Mass., 212, 213.

In the case just cited, the Massachusetts Court held that the
word "corporation" in a statute authorizing the interrogating of
officers of corporations did not include a municipal corporation.

"It has been a general rule in our legislation that statutes
passed for the regulation of the rights and liabilities of corpo-
rations are to be applied only to private or moneyed corpora-
tions and not to public or municipal corporations or quasi

corporations." *O'Donnell, Admr.* v. *Inhabitants of North Attleborough,* 212 Mass., 243, 245, 246, 98 N. E., 1084, 1085.

In *Franklin Savings Bank* v. *Inhabitants of Framingham,* 212 Mass., 92, 98 N. E., 925, it was held that the word "corporation" in the Negotiable Instrument Act did not include cities and towns.

Of all the actions that have been brought in Maine under the Lord Campbell Act, we have discovered none against a town; so the question before us is novel in this State.

In *Linehan* v. *City of Cambridge,* supra, and in *O'Donnell* v. *Inhabitants of North Attleborough,* supra, considerable emphasis is laid upon the fact that the laws pertaining to towns are collected and classified by themselves in the statutes. In the three revisions of our statutes since the enactment of this law in 1891, it has been inserted under "Title" "Civil Rights and Remedies" and the particular chapter in which it has appeared is entitled "Actions by or Against Executors and Administrators." Nothing in this chapter relates to municipalities, nor anything in the other twenty-nine chapters under this "Title" save one, Chapter 97, which has to do only with municipal and police courts and trial justices. On the other hand, the statutes relating to towns are properly segregated in "Title One" entitled "The State; Its Sovereignty and Government; Citizenship; Voting; Taxes." Quite apart, private corporation statutes are found in "Title Four" together with Banking, Insurance, Railroad, Telegraph, Telephone, Water, Navigation and Public Service Company statutes. Such separation and segregation are not accidental. Their utter dissimilarity accounts for it. It is so marked that leading authors and commentators (vide Dillon and Morawetz; McQuillan and Thompson) have dealt with each as a separate and independent subject. In Law Schools these subjects are taught in separate courses. Widely different and separate statutes provide for their organization and dissolution. Their reasons for being are unlike, the one to serve the public and its interest, the other its private owners, its stockholders. The conduct of business of the one and the other differs materially as well as the manner of election of their officers and the performance of their duties.

"It is true that all cities and towns must possess for the discharge of municipal duties certain limited corporate powers,

coextensive with the duties imposed. But the main purpose of their organization is political, and that organization always embraces the inhabitants who for the time may be within the territorial limits into which the Legislature, according to its own views of public convenience, may have divided the Commonwealth. The inhabitants do not, like the members of a private corporation, derive private or personal rights under the act of incorporation, the sole office and object of which is to regulate the manner of performing public and political duties. While exercising corporate powers to the extent indicated, they yet differ distinctively and widely from private and moneyed corporations, both in organization, government and mode of action." *Linehan* v. *City of Cambridge*, supra, page 212.

In *Eames* v. *Savage*, 77 Me., 212, 218, Justice Emery said:

"Towns, however, are not full corporations. They have no capital stock, and no shares. They are only quasi corporations,—created solely for political and municipal purposes, and given a quasi corporate character for convenience only. They remain still an aggregation of individuals dwelling within certain territorial limits, and under the direct jurisdiction of the Legislature."

Town and cities as municipal corporations, in Maine decisions, have been referred to, as: "Quasi corporations." *Mitchell* v. *City of Rockland*, 52 Me., 118, 123; *Small* v. *Inhabitants of Danville*, 51 Me., 359, 361; *Eames* v. *Savage*, supra, page 218; *Hooper* v. *Emery, et al.*, 14 Me., 375, 377; "Public corporations for public purposes." *Opinions of Justices*, 58 Me., 590, 597; *Inhabitants of North Yarmouth* v. *Skillings*, 45 Me., 133, 141; *Bradford* v. *Cary*, 5 Me., 339, 343; "Part of governments." *Opinions of Justices*, supra, page 596; "Institution of the state, established for certain public purposes." *Inhabitants of Westbrook* v. *Inhabitants of Deering*, 63 Me., 231, 236; "Agencies of the Government." *Woodcock* v. *City of Calais*, 66 Me., 234, 235; "Auxiliaries of the government." *Inhabitants of Camden* v. *Camden Village Corp.*, 77 Me., 530, 534, 1 A., 689; "Political sub-divisions." *Carlton, et als.*

v. *Newman,* 77 Me., 408, 415, 1 A., 194; "Political organization." *Thorndike* v. *Inhabitants of Camden,* 82 Me., 39, 43, 19 A., 95; "Territorial divisions into which the territory of the state is divided by the Legislature for political purposes." *Lovejoy* v. *Inhabitants of Foxcroft,* 91 Me., 367, 369, 40 A., 141; "Sub-divisions of general government." *The Milbridge & Cherryfield Electric R. R. Co., Appellants,* 96 Me., 110, 115, 51 A., 818; "Not voluntary associations or business corporations but political agencies." *Hone et al.* v. *Presque Isle Water Co.,* 104 Me., 217, 225, 71 A., 769; "Agents of state." *City of Augusta* v. *Augusta Water District,* 101 Me., 148, 150, 63 A., 663; *Sawyer* v. *Gilmore, State Treasurer,* 109 Me., 169, 83 A., 673; "Instruments of government." *Inhabitants of Bayville Corporation* v. *Inhabitants of Boothbay Harbor,* 110 Me., 46, 51, 85 A., 300; "Hand of the State." *Inhabitants of Town of Frankfort* v. *Waldo Lumber Co.,* 128 Me., 1, 4, 145 A., 241.

If it be said and it is admitted that in a sense a town is a corporation and so comes within the strict letter of the law, yet " 'a thing may be within the letter of the statute and not within its meaning, . . . The intention of the law maker is the law. *Smythe* v. *Fiske,* 23 Wall., 374.' . . . The real meaning of the statute is to be ascertained and declared even though it seems to conflict with the words of the statute." *Carrigan, Admr.* v. *Stillwell,* 99 Me., 434, 437, 59 A., 683, 684. It is not reasonable to believe that the Legislature intended the word "corporations" to embrace both towns and private corporations so dissimilar and with practically nothing in common. When the Lord Campbell Act was enacted, the members of the Legislature must have had in mind those dissimilarities. They appreciated the distinction between the State with its public rights and the private corporation. They knew that the town is simply a sub-division of the State. They understood the purpose of and recognized the necessity for *government* and knew that it could function only if it were properly and fitly financed only by taxations and was protected against and safeguarded from litigation except as permitted by the Legislature. They realized that the State itself did and had to function largely through the town, and delegated to it authority for action, not for the good and welfare

of those alone living within the confines of the town but for all citizens of the State. They knew towns were subservient to the State, must obey its commands and that in many acts they performed they had no choice or voice, except as through Legislature-created classes, of which the towns were members, they elected representatives to the Legislature. In the absence of express language in this "death statute," declaring a municipality to be such a corporation, it is not to be presumed that the Legislature so intended. It is not reasonably believable that it would permit only weak implication to raise the flood gates and let rush down previously precluded litigation to devastate the town whose prime purpose is only for the public good.

In *Palmer* v. *Town of Sumner*, 133 Me., 337, 340, 177 A., 711, this Court very recently gave effect to the well-established rules of statutory construction that the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or by *necessary* implication.

True, towns act in two capacities, one corporate, for its own private benefit, and the other governmental in behalf of the State or the public.

> "In the absence of any special rights conferred or liabilities imposed by legislative charter, towns and cities act in a dual capacity, the one corporate, the other governmental. To the former belongs the performance of acts done in what may be called their private character, in the management of property or rights held voluntarily for their own immediate profit and advantage as a corporation, although ultimately inuring to the benefit of the public, such as the ownership and management of real estate, the making of contracts and the right to sue and be sued; to the latter belongs the discharge of duties imposed upon them by the Legislature for the public benefit, such as the support of the poor, the maintenance of schools, the construction and maintenance of highways and bridges, and the assessment and collection of taxes." *Libby* v. *City of Portland*, 105 Me., 370, 372, 74 A., 805, 806. Also *Palmer* v.

*Inhabitants of Town of Sumner,* supra; *Bouchard* v. *City of Auburn,* 133 Me., 439, 179 A., 718.

In *Hughes* v. *City of Auburn,* 55 N. E. 389 (N. Y.), attempted recovery under a death statute similar to ours was denied. In that case the alleged default upon the part of the municipality was neglect of sanitary precautions in the construction or maintenance of a sewer system. The Court said:

"The principle upon which the judgment in this case rests is that an individual who has suffered from disease, caused by the neglect of a city to observe sanitary laws with reference to its sewer system, may recover damages from the city. This principle, if sanctioned and applied generally to all cases coming within its scope, can not fail to produce evils much more intolerable than any that can possibly arise from such acts of omission or commission as the plaintiff states as the basis of this action. It must necessarily become the prolific parent of a vast mass of litigation which the municipality can respond to only by taxation, imposed alike upon the innocent and the guilty. The arguments to sustain such a principle are evidently based upon a misconception of the relations that exist between the individual and the city. The latter is but a creature of the state, engaged in exercising some of the functions of government in a limited locality, not for any private purposes, but solely for the public good. . . . A municipal corporation is nothing more than an instrumentality of the state for the purpose of local government, exercising delegated powers, which the state itself can exercise and may withdraw at pleasure. . . . The law in most cases must proceed upon the principle that it is wiser and better for the members of a political community, general or local, to endure some of the evils that they have, rather than fly to remedies such as are invoked in this case, that are certain in the end to bankrupt the treasury and involve them in endless strife and litigation."

Perhaps the leading, anyway a much cited, case, holding that the word "corporation" in a death statute does not include a town

or municipality, is *Donohue* v. *City of Newburyport*, supra. In that case the plaintiff's intestate, while a traveller upon a public way in the defendant city, received mortal injuries from the fall of a tree within the way, which the tree warden of the defendant was undertaking to remove. The statute provided recovery "if a person or corporation by his or its negligence, or by the negligence of his or its agents or servants while engaged in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service." On the ground that the defendant city was acting as an agency of government and performing duties imposed upon it solely for the benefit of the public, that the duty thus being performed was sovereign and not private in its nature and was done for the common good without any element of private gain or special advantage to the municipality, the Court gave judgment for the defendant. It said on page 569:

"It can not be presumed that the Legislature would intend to work such a radical change in the principles of liability for the performance of public benefit as would be wrought by construing the word 'corporation' to include cities and towns, without the use of plain and unequivocal language. A further confirmation of this view is found in the statute which has existed for more than a century imposing liability upon a municipality for death resulting to a traveller upon a public way from its defective construction. R. L. c. 51, Sec. 17."

Our highway statute above referred to (R. S. 1930, Chap. 27, Sec. 94) in which the "life-lost" clause appears, corresponds to the one mentioned in the last quotation. So here we have like confirmation; for when Maine by Legislative Act desired to change the common law and make recovery possible for loss of life from an accident on the highway, it specially legislated to that end by express language and with direct application.

The same interpretation of the word "corporations" in a death statute was given in *City of Dallas* v. *Halford, et al.*, 210 S. W., 725 (Texas). In his opinion, Chief Justice Rainey said:

"Municipalities in a sense are corporations, but, as generally used, the term 'corporations' means private corpora-

tions, and does not include municipal corporations. Whether the term 'corporation,' as commonly used, includes only private corporations, or also embraces municipal corporations, is a disputed question, but we believe, when the courts of last resort have been called upon to decide the question, the great majority of the jurisdictions hold that it does not." Then follow many citations.

A reading of germane cases, almost without number, reveals three conclusions: First, that the word "corporations" does not include towns and municipalities; second, that it does; and, third, that where it does generally include them, it does not where the death is caused in the performance of governmental or public duties.

In the case at bar, the negligence complained of as the cause of the death was the failure to observe due care in construction or maintenance of a State-aid highway. Such construction or maintenance was governmental service, not corporate, and was performed by the Town as an agency of the State. At common law, the party, had he lived, could not have maintained this action. *Vide ut supra.*

"The power to locate, discontinue, make and repair highways is part and parcel of the political government of the State. For convenience, this power is confided in many cases to town officers. The duties of such officers are defined and imposed by public statutes, and not by their respective constituencies. . . . The officers thus chosen are public officers to all intents and purposes; as clearly so as higher officers of the State in their sphere. In legal contemplation they are not the servants, or agents of their respective towns, but public officers. Being public officers of a public corporation, acting in its capacity as a political division, the corporation is not liable for their unauthorized or wrongful acts, though done in the course and within the scope of their employment." *Small* v. *Inhabitants of Danville*, supra, on page 361.

In *Graffam* v. *Town of Poland*, 115 Me., 375, 99 A., 14, 16, Justice King stated:

"The work was being done under the instructions of the State Highway Commission and in accordance with plans and specifications furnished by it. That commission determined what improvements should be made and the manner of making them. But if Mr. Emery had been constructing the way in his capacity as road commissioner, without any interference or special direction by the town, he would then have been acting in the capacity of a public officer, and while so acting he would not have been in legal contemplation the servant or agent of the town, and the town would not be liable for his wrongful or negligent acts, though done in the course and within the scope of his employment." *Goddard* v. *Inhabitants of Harpswell*, 84 Me., 499, 24 A., 958; *Bryant* v. *Inhabitants of Westbrook*, 86 Me., 450, 29 A., 1109; *Bowden* v. *City of Rockland*, 96 Me., 129, 51 A., 815.

The exceptions in this case must be overruled if either one of two of the three "conclusions" above noted be adopted, namely, that the word "corporation" in our death statute does not include a town, or if it does in some instances, it does not when the town is acting in a governmental capacity. Herein we hold that the word "corporations" in our Lord Campbell's Act or death statute does not include a town when the town charged with wrongful act, neglect or default is engaged in its governmental rather than corporate capacity. For decision here, it is not necessary to indicate what our opinion would be in a case where such wrongful act, neglect or default had to do with the performance of a corporate or private act.

*Exceptions overruled.*