Christine A. DENBOW

v.

Thomas HARRIS.

Supreme Judicial Court of Maine.

Argued Oct. 29, 1990.
Decided Dec. 4, 1990.

Sean F. Faircloth (orally), Asst. Atty. Gen., Dept. of Human Services, Bangor, for plaintiff.

Peter A. Anderson (orally), Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and BRODY, JJ.

WATHEN, Justice.

Thomas Harris appeals from a judgment in the Superior Court (Penobscot County, *Smith, J.*), affirming a judgment in the District Court (Bangor, *Cox, J.*) granted pursuant to 19 M.R.S.A. §§ 271–287 (1981 and Supp.1990) (Uniform Act on Paternity). The District Court determined Harris was the father of the minor child of Christine A. Denbow, awarded sole parental rights and responsibilities to her, and held him liable for a share of the child's support and health care costs. Expanding on dicta in *Atkinson v. Hall*, 556 A.2d 651, 652 (Me. 1989), Harris argues that Maine's version of the Uniform Act on Paternity does not provide a woman with a paternity action where her child is conceived during marriage. We disagree and affirm the judgment of the District Court.

The facts presented in this record may be summarized as follows: Christine Denbow married Lewis A. Denbow in 1983. The couple separated in 1986, but remained married until March 1988 when their divorce became final. Ms. Denbow testified that she did not have sexual intercourse with Lewis Denbow after October 1986. During the summer and fall of 1987, she had sexual intercourse with Harris and with another man. After learning she was pregnant, she initiated a paternity action against Harris. The child was born in May 1988. Blood tests performed on Harris and the other man excluded the other man as the father of the child, and showed a 99.97% probability that Harris is the father. The District Court denied Harris's motion to bring in Lewis A. Denbow as an additional defendant pursuant to M.R.Civ.P. 19.

Following a trial, the District Court found beyond a reasonable doubt that Harris is the father, awarded Ms. Denbow a judgment against him for various expenses of the birth and child support, and awarded sole parental rights and responsibilities to her. The Superior Court affirmed, and Harris now appeals to this court. We review directly the action of the District Court. *City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 181 (Me.1984).

I.

Maine's version of the Uniform Act on Paternity allows a mother to bring an action for various expenses of pregnancy, childbirth, and support against "[t]he father of a child who is or may be born out of wedlock." 19 M.R.S.A. §§ 271, 272. M.R. Evid. 302, on the other hand, provides a presumption of legitimacy of a child born or conceived during marriage that may be overcome only by proof of illegitimacy beyond a reasonable doubt.

At common law, a child born out of wedlock was *filius nullius*, nobody's child, and could not inherit from anyone, nor force anyone to support him. The earliest bastardy statute provided an action whereby the overseers of the poor could force the putative father to provide support for the child, thus relieving the public of the burden. *See Kowalski v. Wojtkowski*, 19 N.J. 247, 116 A.2d 6, 10, 53 A.L.R.2d 556 (1955). This action in bastardy was the direct ancestor of the Uniform Act on Paternity. *See Thut v. Grant*, 281 A.2d 1, 3 (Me.1971).

The English courts early adopted Lord Mansfield's Rule, which prohibited either husband or wife from so testifying as to bastardize a child born after marriage, and thereby perhaps relieve the husband of his duty of support. *See Ventresco v. Bushey*, 159 Me. 241, 244, 191 A.2d 104, 106 (1963). Given the lack of other means of proof (prior to blood tests, one exhibited the baby to the jury to show family resemblance), Lord Mansfield's Rule operated more as a rule of substantive law than as a mere testimonial disability. *See Kowalski*, 116 A.2d at 10–12. Because Lord Mansfield's Rule was generally referred to as a "presumption of legitimacy," *see Ventresco*, 159 Me. at 244, 191 A.2d at 106, clearly the term "legitimacy" had drifted away from its original inheritance-law meaning and had come to represent a different concept, perhaps best phrased as "the husband's

paternity."[1]

We repudiated Lord Mansfield's Rule in *Ventresco v. Bushey,* 159 Me. at 249–250, 191 A.2d at 108. We instead adopted a presumption of "legitimacy," rebuttable by proof beyond a reasonable doubt, that presumes the husband's paternity if a child is born or conceived while the mother is married. That presumption is now embodied in M.R.Evid. 302. *See* Field & Murray, *Maine Evidence* § 302.1 at 68 (2d ed. 1987).[2]

In *Atkinson,* we questioned "whether Maine's paternity statute contemplates an action to establish that the father of a child born during marriage is someone other than the mother's husband." *Id.* at 652.[3] We noted:

> The Uniform Act on Paternity, which the Maine statute otherwise closely follows, specifies that "[a] child born out of wedlock includes a child born to a married woman by a man other than her husband." § 1, 9–B U.L.A. 350 (1960). Significantly, the Maine Legislature dropped this sentence entirely in enacting the Maine version. Thus, it is possible that the Maine Legislature intended to limit paternity actions to instances to where children were born to an unmarried woman.

*Id.* Harris now argues that no paternity action lies against him because the child was conceived while Ms. Denbow was married.

We find this argument unpersuasive. In *Atkinson,* we implicitly rejected it by upholding a paternity judgment for a woman whose child was born during marriage. We conclude that the expanded definition contained in the Uniform Act is mere surplusage, because the dictionary definition of "out of wedlock" is "with the natural parents not legally married to each other." *Webster's Third New International Dictionary Unabridged* 2592 (1986). We cannot conclude that the Legislature intended to change the law of paternity by omitting definitional surplusage. *Cf. Chase v. Inhabitants of Litchfield,* 134 Me. 122, 182 A. 921 (1936). The Uniform Act on Paternity allows a paternity action even when the child is born to a mother who is married.

## II.

Harris contends on appeal that the blood test results were inadmissible because 19 M.R.S.A. § 280 requires that blood test results show the "probability of the alleged father's paternity." He argues that because the report of the results here used the terms "plausibility" and "chance" they were in inadmissible form. The only formal requirement in section 280, however, is that a written report of blood test results be notarized in order to be admissible without having the expert preparing the report appear in person to authenticate it.[4] The statute does not otherwise pre-

---

1. Paternity, of course, is a question of biological fact, while legitimacy is a legal conclusion relating to the laws of inheritance. We have long recognized the distinction between the meanings of "legitimacy" as used in the different contexts of inheritance and paternity. *See Buzzell v. Buzzell,* 235 A.2d 828, 830 (Me.1967). The U.S. Supreme Court has imposed heightened scrutiny under the Equal Protection Clause on the use of legitimacy as a classification. *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *see also Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). The Maine Probate Code does not use the term, and largely abandons the concept. *See* 18–A M.R.S.A. § 2–109 (1981 & Supp.1989).

2. Field & Murray correctly notes that "[t]he rule does not provide an adjudication of *paternity* where a woman is married to one man at the time the child was conceived and to another

when the child is born," but goes on to say that "[t]he presumption is of legitimacy, not of paternity." Field & Murray at 68. It might be more precise to say that the presumption of a husband's paternity is inapplicable where there are two successive husbands.

3. In *Atkinson,* we faced the question whether the statutory rebuttable presumption of paternity where the probability of paternity as determined by a blood test is greater than 97%, 19 M.R.S.A. § 280(1)(D), conflicted with the presumption of legitimacy in M.R.Evid. 302. We affirmed the decision of the trial court to disregard both presumptions and require proof of paternity by a preponderance of the evidence. 556 A.2d at 653.

4. The blood test results in this case were notarized, and Harris withdrew his challenges to them prior to trial.

scribe any particular form. Instead, it addresses the *effect* of test results. Moreover, section 280(1)(D) states that results of blood tests that show a 97% or higher probability of paternity must be admitted in a paternity case. The District Court committed no error in admitting the report of the blood test results.

■ Because Ms. Denbow admitted she had intercourse with another man near the time of conception, Harris argues that the blood test results are unreliable. He contends the results are "based upon a presumption that the Plaintiff had sexual intercourse with only the Defendant during the period of conception." He misconceives the nature of the uncertainty expressed by the statistical model. Even if blood test results cannot conclusively establish his paternity, they did exclude the other man, and Ms. Denbow's testimony excluded her husband. The blood tests further revealed that Harris, the only other possibility suggested by the evidence, exhibited a high probability of paternity, as compared with a hypothetical randomly selected male. The District Court committed no error in relying on the blood test results.

Harris's remaining arguments are without merit and require no discussion.

The entry is:

Judgment affirmed.

All concurring.