FRANZ U. BURKETT, ATTORNEY GENERAL,

ON RELATION, PETITIONER FOR MANDAMUS,

*vs.*

FRANK O. YOUNGS ET AL., OF THE CITY COUNCIL OF BANGOR.

Penobscot.     Opinion, May 18, 1938.

*Pattangall, Goodspeed & Williamson,* for petitioner.
*James B. Mountaine,*
*Charles P. Conners,*
*Cook, Hutchinson, Pierce & Connell,* for respondents.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J.    This mandamus proceeding was instituted by the Attorney General, upon the relation of a taxpayer and voter of Bangor, to coerce the respondents, who compose the city council of Bangor, to refer, for the local electorate's acceptance or rejection,

the general appropriation resolve which the council passed for the fiscal year 1938.

The majority of the council members allegedly refused a petition for a referendum.

Procedure has been this:

On application for the writ, rule issued to the adverse parties, to appear and show cause, if they could, why the prayer of the relator should not be granted.

Service was duly proven.

The respondents conceded that the petition would, in respect to form, as the antithesis of, and in opposition to substance, justify the issuance of an alternative writ.

In mandamus, the alternative writ corresponds to a common-law declaration in an ordinary action, and is usually deemed the first pleading in the cause. By the writ, the respondent is called upon to perform the act sought to be enforced, or, by way of answer, commonly termed a return, aver why it should not be done.

The concession with regard to premise for the alternative writ having been made, thereupon the parties stipulated that whether the issue for the peremptory writ should be maintained might be determined on the application and answers, implemented by evidence of relevancy and legal admissibility.

The peremptory writ requires doing the thing absolutely.

At the time for hearing on the merits, agreement as to the facts was stated.

Upon that, the case was, the parties consenting, certified to the Chief Justice. R. S., Chap. 91, Sec. 9; Chap. 116, Sec. 17. See, in analogy, *Welch* v. *Sheriff*, 95 Me., 451, 50 A., 88.

Bangor's new city charter vests certain powers of government in a city council. P. & S. L. 1931, Chap. 54; P. &. S. L. 1935, Chap. 49. The members, nine in all, constitute the municipal officers of the city; they have the powers and authority of municipal officers, as well as those of mayors of cities.

The city council appoints the superintending school committee, and fills vacancies in membership; it chooses, annually, a chief administrative officer, called a city manager.

Agreeably to a charter provision, the school committee furnished

the city council with an estimate, inclusive of the particulars, the details and all the incidents of the cost of supporting the existing grade schools, as well as the high school and the evening school, for the year 1938.

The city manager submitted his budget for expenses and improvements; he indicated the extent to which, to provide revenue in addition to that expected from other sources, there should be, to defray both estimate and budget, exercise of the power of taxation.

The resolve, as passed by the city council, is as follows:

"Resolve, Appropriation for the Municipal Year of 1938. By the City Council of the City of Bangor:

"Resolved, That the sum of Eight Hundred Eighty-five Thousand Seven Hundred & fifty-four dollars (885,754.00) be raised by assessments upon the polls and estates of the inhabitants of the City of Bangor and upon the estates of non-resident proprietors within said city for the present municipal year and the same is hereby appropriated in addition to sums otherwise provided, the amount for each purpose being specified in the schedule hereto annexed—to wit:"

The schedule is, for present purposes, in these words and figures:

*"Summary*

|  | Budget 1938 |
|---|---|
| General Government | $ 68,062. |
| Protection of Persons & Prop. | 197,137. |
| Health Department | 13,038. |
| Public Works | 161,865. |
| All Charities | 125,304. |
| Education | 366,790. |
| Library | 20,000. |
| Recreation | 1,800. |
| Unclassified | 26,175. |
| Public Service Enterprises | 170,560. |
| Cemeteries | 2,900. |
| Interest | 39,523. |

| | |
|---|---:|
| Municipal Indebtedness | 20,000. |
| Bangor Bridge District | 6,000. |
| Municipal Airport | ———. |
| Notes | 7,500. |
| | |
| Total | $1,226,654. |
| Revenue Received | ———. |
| Estimated Revenue | 340,900. |
| | |
| | $ 885,754. |

&ast; &ast; &ast; &ast; &ast; &ast;

&ast; &ast; &ast; &ast; &ast; &ast;

Amount to be provided for by assessment upon the polls and estates of the inhabitants of Bangor and upon the estates of non-resident proprietors for the expenses of the City for the fiscal year........1938–885,754."

Some of the appropriations were, under state law, obligatory on the city; for illustration, common schools. The Legislature defines, in minimum requirement, what amount of money must be raised and expended, in such connection. R. S., Chap. 19, Sec. 16; *Piper* v. *Moulton,* 72 Me., 155, 166; *Farmington* v. *Miner,* 133 Me., 162, 175 A., 219.

The proportion of the State tax, as determined by the Legislature, which each city, town and plantation shall pay, respectively, is required to be added to the local taxes, assessed and collected locally, and paid to the State. R. S., Chap. 13, Sec. 33, as amended by P. L. 1933, Chap. 285; P. & S. L. 1937, Chap. 102; *Rowe* v. *Friend,* 90 Me., 241, 38 A., 95. The county tax, too, is, by statute, for local assessment, commitment and collection. R. S., Chap. 13, Sec. 68.

The Thirty-first Amendment to the Constitution of Maine is, in section 21, of this tenor:

"Sec. 21. The city council of any city may establish the initiative and referendum for the electors of such city in re-

gard to its municipal affairs, provided that the ordinance establishing and providing the method of exercising such initiative and referendum shall not take effect until ratified by vote of a majority of the electors of said city, voting thereon at a municipal election. Provided, however, that the legislature may at any time provide a uniform method for the exercise of the initiative and referendum in municipal affairs."

The Legislature has not provided a uniform method for the exercise of the initiative and referendum in municipal affairs.

The initiative and referendum do not supersede city government, but are consistent with it. The city remains a governmental unit; even in instances of the rejection, on referendum, of submitted propositions, the city government, as such, would still function. However, the initiative and referendum may well be a means of obtaining, on the part of a city government, in the field of legislation, a sense of direct responsibility to the people. Munro: The Initiative, Referendum and Recall, p. 88.

The constitutional amendment employs, without definition, the expression "municipal affairs."

Hereon, this opinion will later say more.

The Bangor City Council established the initiative and referendum. The ordinance was ratified at a popular election on December 7, 1931. It appears to have been retained in 1935.

This right of initiative and referendum was necessarily restricted to "municipal affairs."

What are municipal affairs?

There are no well laid rules or principles by which to ascertain the answer to that question. McQuillin, Municipal Corporations, (2nd ed.) Sec. 194, citing *Sapulpa* v. *Land,* 101 Okl., 22, 223 P., 640, 35 A. L. R., 872; *Browne* v. *New York,* 241 N. Y., 96, 149 N. E., 211.

Municipal affairs, it has been said, comprise the internal business of a municipality. *Fragley* v. *Phelan,* 126 Cal., 383, 58 P., 923.

"The referendum as applied to municipal affairs affects only those ordinances or resolutions that are municipal legislation." *State* v. *White,* 36 Nev., 334, 136 P., 110, 50 L. R. A.

(N. S.), 195 note, at page 204; *Long* v. *Portland*, 53 Ore., 92, 98 P., 149.

The City of Bangor is a territorial and political division of the State of Maine. *Lovejoy* v. *Foxcroft*, 91 Me., 367, 40 A., 141; *Hone* v. *Water Company*, 104 Me., 217, 71 A., 769. Purely of legislative creation, the municipality, as an instrument of government, a hand of the state, is always subject to public control through the Legislature. *Thorndike* v. *Camden*, 82 Me., 39, 19 A., 95; *Bayville Village Corporation* v. *Boothbay Harbor*, 110 Me., 46, 85 A., 300; *Frankfort* v. *Waldo Lumber Company*, 128 Me., 1, 145 A., 241.

The city has, by delegation, a measure of ordinance power.

When, in 1834, the Legislature conferred the city charter, there was empowerment to ordain such acts, laws and regulations, not inconsistent with the Constitution and laws of the state, as needful for good order therein. P. & S. L. 1834, Chap. 436.

In 1935, the Bangor City Council was specifically authorized to enact thirty or more regulatory ordinances. P. &. S. L. 1935, Chap. 14.

A city may not legislate without limit; it is subordinate to the state.

"As well might we speak of two centers in a circle as two sovereign powers in a state." *Timlin, J., concurring, in State, ex rel.* v. *Thompson*, 149 Wis., 488, 137 N. W., 20.

The Legislature may, at any time, revise, amend, or even repeal any or all of the city charters within the State, having reference, of course, to vested rights and limitations provided by fundamental law. *Straw* v. *Harris*, 54 Ore., 424, 103 P., 777.

That it may not always be easy to distinguish local administration from state administration, and separate state from municipal functions, presents no new difficulty. *McQuillin*, supra, Section 194, and cases cited.

"If the Constitution or statute speaks upon a subject, the public policy of the state is necessarily fixed to that extent." *Gathright* v. *Byllesby & Co.*, 154 Ky., 106, 157 S. W., 45.

The public school system is of state-wide concern. Constitution of Maine, Art. VIII; *Talbot* v. *East Machias*, 76 Me., 415; *Sawyer* v. *Gilmore*, 109 Me., 169, 83 A., 673; *Lunn* v. *Auburn*, 110 Me., 241, 247, 85 A., 893. The obligation to appoint policemen is devolved by statute, but they act as conservators of the public peace, the peace of the state, not the peace of the city alone. *Cobb* v. *Portland*, 55 Me., 381. Tax assessors proceed under statute authority. *Thorndike* v. *Camden*, supra; *Rockland* v. *Farnsworth*, 93 Me., 178, 44 A., 681; *Penobscot, etc. Company* v. *Bradley*, 99 Me., 263, 59 A., 83; *Brownville* v. *Shank Company*, 123 Me., 379, 123 A., 170; *Milo* v. *Water Company*, 131 Me., 372, 163 A., 163. So also do tax collectors. *Tozier* v. *Woodworth*, 135 Me., 46, 188 A., 771. It would be their duty to act, when occasion arises, even in spite of a vote of the town. *Thorndike* v. *Camden*, supra. Road commissioners are chosen in the performance of a public duty imposed by law. *Bryant* v. *Westbrook*, 86 Me., 450, 29 A., 1109; *Goddard* v. *Harpswell*, 84 Me., 499, 24 A., 958. Public officers act for the public, and not merely as agents acting for the town. *Goddard* v. *Harpswell*, supra.

"On the other hand," to quote from Mr. McQuillin's book, "all of those public affairs which alone concern the inhabitants of a locality as an organized community apart from the people of the state at large, as supplying purely municipal needs and conveniences and the enforcement of by-laws and ordinances of a strict local character limited to the interests of the city residents, are essentially local matters." *McQuillin*, supra, Sec. 196.

The distinction is between state affairs and local affairs. *People* v. *Chicago*, 51 Ill., 17; *People* v. *Detroit*, 28 Mich., 228; 29 Mich., 108.

The referendum, as applied to municipal affairs, affects only those ordinances and resolves that are municipal legislation. *Long* v. *Portland*, supra; re-hearing denied, 53 Ore., 99, 98 P., 1111. See, also, *Acme Dairy Company* v. *Astoria*, 49 Ore., 520, 90 P., 153.

The policy of some individual State, its laws, organic, statutory and decision, may be otherwise, but the trend of the decided cases is that matters which relate, in general, to the inhabitants of the

given community and the people of the entire State, are of the prerogatives of State government. The State at large is equally concerned with the city regarding education, the support of the poor, the construction and maintenance of highways, the assessment and collection of taxes, and other matters. *Libby* v. *Portland*, 105 Me., 370, 74 A., 805; *Chase* v. *Litchfield*, 134 Me., 122, 182 A., 921. In fact, there are comparatively few governmental doings that are completely municipal.

The statement seems to decide this case.

Where the manifest intention of the Constitution is that, in relation to cities, the referendum shall be limited to municipal affairs, that intention must prevail.

Mandamus will not be granted where it will avail nothing.

The peremptory writ should be denied and the petition dismissed.

*The case is so decided.*