ALEXANDER A. LAFLEUR, ATTORNEY GENERAL ON RELATION OF CARL E. ANDERSON, ET AL.

*vs.*

HELEN C. FROST, ET AL.

AND

JOSEPH R. MCLAUGHLIN, ET AL.

*vs.*

EDWARD T. COLLEY, ET AL.

Cumberland. Opinion, April 27, 1951.

*Wilfred A. Hay,*

*Theodore R. Brownlee,*

*John E. Hanscomb,* for petitioners (plaintiffs)

*Barnett I. Shur,*

*Robert W. Donovan,* for defendant (respondents)

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J. The mandamus case of LaFleur, Attorney General, ex rel. Anderson et als., and the equity case of McLaughlin et als. v. Colley et als. are companion cases presented on report with arguments in writing with the issues in each case relating to the exercise of the initiative and referendum in the City of Portland. The relators in the mandamus case are qualified voters, and the plaintiffs in equity are ten citizens and taxable inhabitants, all of the City of Portland. The members of the City Council are the respondents in the mandamus case and with the City Clerk, the defendants in equity.

The vital and controlling issue is whether the initiative and referendum established by the City Council on November 6, 1950 and ratified by the electors on December 4, 1950 under the provisions of Amendment XXXI, Sections 21 and 22, of the Constitution of Maine, is valid.

In the mandamus case, the relators seek to compel the submission of an initiative and referendum ordinance

(which we will call "the proposed ordinance") to the voters under the initiative and referendum provisions of the City Charter.

In the equity case the plaintiffs seek to have the ordinance established by the City Council and ratified by the electors (which we will call the "city ordinance") declared invalid and null and void.

Unless otherwise indicated, references to the Charter will will be to Article III, entitled "Initiative and Referendum," found in P. & S. L., 1923, Chap. 109 as amended; and reference to the Constitution will be to Section 21 of Amendment XXXI.

It must be borne in mind that both the "proposed" and the "city" ordinances in terms establish the initiative and referendum, and further that the Charter has contained provisions for the initiative and referendum since enacted by the Legislature and approved by the voters of Portland at a referendum in 1923.

The action which resulted in the cases being before us took place from October 1950 to January 1951.

October 23 — The "proposed ordinance" was duly initiated by the filing of a petition in accordance and compliance with the Charter.

November 6 — Acting under authority granted by the Constitution, the City Council established the initiative and referendum by adoption of the "city ordinance" to be submitted to the electors for ratification at an election to be held on December 4th.

November 21 — Plaintiffs in equity filed their bill seeking (1) a finding and decree that the "city ordi-

nance" is invalid, and, if ratified, would be null and void; (2) an injunction to prevent its submission to the voters and action by the city clerk in connection with the election; and (3) general relief.

**November 22** — After hearing, injunction was denied.

**December 4** — The "city ordinance" was ratified by vote of a majority of the electors voting thereon.

**December 6** — The petition initiating the "proposed ordinance" signed by more than 500 qualified voters was duly presented by the City Clerk to the City Council at its first regular meeting after the closing of the petition upon the expiration of the thirty-day period for signatures by qualified voters. Full and complete compliance with the preliminary requirements of the Charter relative to preparation, signature, and presentation of a petition initiating an ordinance is not questioned. Apart from considerations to be noted later, under the terms of the Charter, it became the duty of the City Council to "immediately take the necessary steps to submit to the voters of the city the question proposed in said petition," provided the Council did not pass the ordinance, and further within ten days of the presentation of the petition to set a time for submission at a

special or general election within a limited period in the future. The "proposed ordinance" has n e i t h e r been passed nor been submitted to the voters by the City Council.

**January 3, 1951 —** The "city ordinance" ratified by the voters on December 4th in terms became effective.

**January 4, 1951 —** Mandamus proceedings commenced by relators—amended on January 9th with the alternative writ then issuing.

The case in equity is before us on bill, with bill of particulars, answer, replication, and stipulation of facts. When filed, the bill sought to enjoin the submission of the "city ordinance" to the vote of the people on the ground it was invalid and would be, if ratified, null and void. Injunction was denied. The vote was taken, and the "city ordinance," before then a proposal, was thereby ratified, becoming effective thirty days later.

The primary purpose for which the bill was brought ended with the failure to prevent the submission of the "city ordinance" to the voters. The plaintiffs urge that the bill *now presents* a proper case for a declaratory judgment under the Uniform Declaratory Judgments Act, *(R. S., Chap. 95, Sec. 38 et seq.)* and that the right to such a judgment must be determined as of the date when the bill was filed.

In our view, however, we must look at the situation as it existed when presented to us. Plaintiffs no longer seek preventive but remedial relief. Our court has said, "Individual taxpayers of a municipal corporation have not ordinarily the right to sue for remedial relief, where the wrong, for which they seek redress, is one which affects the entire community and not specifically those bringing the action." *Bay-*

ley et als. v. *Inh. of Town of Wells et al.*, 133 Me. 141, 174 A. 459. See also *Eaton et als.* v. *Thayer et als.*, 124 Me. 311, 128 A. 475, and *Tuscan* v. *Smith et als.*, 130 Me. 36, 153 A. 289. The relief now sought is that the "city ordinance" duly enacted and in terms effective be declared invalid and null and void. No relief against the members of the City Council or the City Clerk would be appropriate for their official duties have been fully performed.

Wherein is there a controversy between the plaintiffs, who differ not at all from any other ten taxable inhabitants of Portland, and the City Council, and the City Clerk with respect to the "city ordinance"? The City Clerk, who has performed the duties required by him in connection with the election, has no further official interest in the matter. What action, if any, is proposed by the plaintiffs in equity which calls for a decision against the members of the City Council? To say that the plaintiffs are entitled to have a declaratory judgment is to say that any ten taxable inhabitants of the city may at any time obtain a declaratory judgment upon the validity of any ordinance of the city whether or not the plaintiffs are affected particularly by the ordinance under attack.

The plaintiffs do not show there is a controversy between the parties by reason of which they are entitled to a judgment. A judgment would be not a declaratory judgment in the proper sense, but an advisory opinion given without warrant of authority on our part. "It is essential that a controversy exist; for otherwise the petition would seek only an advisory opinion of the Court." *Maine Broadcasting Co., Inc.* v. *Banking Co. et al.*, 142 Me. 220, 49 A. (2nd) 224. Apart from declaratory judgment, it is necessary that the party who attacks the constitutionality of an ordinance be aggrieved thereby. See *Chapman* v. *City of Portland*, 131 Me. 242, 160 A. 913; *McQuillin*, "*Municipal Corporations*," 3rd Edition, Sec. 20.16.

There are other reasons as well why the equity case does not call for a declaratory judgment. The validity of an ordinance is involved, and it is alleged to be unconstitutional.

The record does not show that the municipality, the City of Portland, a body politic and corporate, is a party or that the attorney general has been served with a copy of the proceeding. *Sec. 48 of Uniform Declaratory Judgments Act, supra.* The members of the City Council are not the municipality. The attorney general is the petitioner for mandamus, but has not, so far as it appears, interested himself in the equity case.

The bill in equity must be dismissed.

In the mandamus case we have before us the amended petition, alternative writ, return thereto, traverse of petitioners, and stipulation of facts.

The relators by the mandamus proceedings seek to have the "proposed ordinance" initiated under the Charter, submitted to the voters in accordance with the Charter. As we have seen, the "city ordinance" has been established and ratified under the Constitution and is presently in terms effective. If the "city ordinance" is valid and, if thereby, the initiative and referendum are established for the City of Portland, it would be a useless procedure to compel the submission to the voters of the "proposed ordinance." "Mandamus will not be granted when it will avail nothing." *Burkett, Attorney General v. Youngs et al.,* 135 Me. 459 at 467, 199 A. 619. The relators gain nothing from the fact that their "proposed ordinance" was initiated *before* the "city ordinance" was passed by the city government; or from the fact that, apart from other considerations, the City Council failed to act within the times prescribed by the Charter before the "city ordinance" became effective.

When the case was presented on report, in terms the "city

ordinance" was in force and effect. It is with this fact in mind that we approach the question of issuance of the peremptory writ.

The "city ordinance" was adopted under the Constitution. The source of the right to establish the initiative and referendum by ordinance approved by the electors lies in the *Constitution,* and *not* in the *Charter.*

Sections 21 and 22 of Amendment XXXI of the Constitution read:

> "Section 21. The city council of any city may establish the initiative and referendum for the electors of such city in regard to its municipal affairs, provided that the ordinance establishing and providing the method of exercising such initiative and referendum shall not take effect until ratified by vote of a majority of the electors of said city, voting thereon at a municipal election. Provided, however, that the legislature may at any time provide a uniform method for the exercise of the initiative and referendum in municipal affairs.
> "Section 22. Until the legislature shall enact further regulations not inconsistent with the constitution for applying the people's veto and direct initiative, the election officers and other officials shall be governed by the provisions of this constitution and of the general law, supplemented by such reasonable action as may be necessary to render the preceding sections self executing."

The Legislature has not provided a uniform method applicable to cities generally, and accordingly we are not here concerned with the last provision of Section 21.

The "city ordinance" reads at the outset as follows:

> "BE IT ORDAINED BY THE CITY COUNCIL OF PORTLAND, MAINE, IN CITY COUNCIL ASSEMBLED: THAT, there be and hereby is established initiative and referendum in the City of Portland dealing with legislative matters on municipal affairs." .

Provision is then made for the method of exercising the initiative and referendum, and for the submission of the ordinance for approval or rejection at an election on a given date.

In brief there was full compliance with the constitutional provisions for the establishment and ratification of the initiative and referendum in Portland. The invalidity, if such exists, must be within the terms of the "city ordinance" and is not to be found in the manner in which it was enacted and ratified.

The "city ordinance" differs from the initiative and referendum provisions of the Charter in certain respects. Its terms are not so broad as the initiative and referendum under the Charter. For example: the "city ordinance" reads:

> "(1) The submission to the vote of the people of *any proposed ordinance dealing with legislative matters on municipal affairs,* or of *any such ordinance enacted by the City Council* and which has not yet gone into effect, may be accomplished—."

The words underscored read in the Charter as follows:

> "of any proposed ordinance, order or resolve, or of any ordinance, order, or resolve enacted by the city council—."

In other words *"ordinance, order or resolve"* under the Charter has been narrowed to *"ordinance dealing with legislative matters on municipal affairs."* Under the "city ordinance," neither the "city ordinance" nor ordinances "dealing with appropriations, tax levy, or with wages or hours of city employees" are subject to the initiative or referendum. There is no such limitation upon the scope of the initiative and referendum under the Charter. The differences mentioned between Charter and "city ordinance" serve to illustrate the point urged by the relators that the Charter has been altered, amended or repealed by the "city

ordinance." Clearly, the initiative and referendum under the "city ordinance" is not the same initiative and referendum set forth in the Charter.

It does not follow, however, that by establishing the initiative and referendum under the authority of the Constitution, the City Council and voters of Portland have changed the Charter. Neither the City Council nor the voters of Portland can change the Charter. The Charter was granted by the people of the state acting through the Legislature.

The Charter remains unchanged, but its operation in the field of the initiative and referendum has been made ineffective by the act of the City Council and the voters under the authority of the Constitution. It needs no citation of authority to establish the principle that the Constitution of Maine is the supreme law of the state (limited, of course, by the Federal Constitution)'. A power granted or reserved by the Constitution may not be limited by the Legislature. The City Council and the voters in establishing and ratifying the "city ordinance" looked directly to the Constitution. No uniform state law prohibited action. They were governed not by any provision of their Charter but by the broad right under the Constitution to have the initiative and referendum if they so chose. Let us suppose the Legislature granted a charter expressly stating there should not be initiative and referendum in a city. Could it be said that the Constitution could thus be rendered a nullity? What difference then if the Legislature by charter provides a form of initiative and referendum which is not acceptable to a city? May not a city under the Constitution establish its own brand of initiative and referendum marked "constitutional" and not "legislative"?

The City Council in argument attack, and the relators defend, each with vigor, the constitutionality of the initiative and referendum provisions of the Charter. In our view of the case, we need not, nor do we, discuss the question

whether the Legislature could under the Constitution grant the initiative and referendum found in the Charter. Our decision does not hinge upon the answer to such an issue. Sufficient it is to say that, once the city establishes the initiative and referendum under the Constitution, it no longer has force and vitality.

In passing we may note that Oberholtzer in "The Referendum, Initiative and Recall in America" (1911) page 420, says, "The initiative and the referendum found a foothold in the East in 1908 when Maine adopted them in a modified form." We were the sixth state to adopt the policy on a state-wide basis. *1 Bulletins For The Constitutional Convention (Mass.)*, (1917-18), 188.

Commencing with 1911, Legislatures have often included provisions for the initiative and referendum in municipal affairs. For example: *Waterville, P. & S., Laws of 1911, Chap. 219.* There is ample evidence that Legislatures from 1911 to 1949 have considered that the Constitutional amendment of 1908 did not prohibit the establishment of the initiative and referendum in cities by charter.

It may be said that the result is the same whether we say the Charter is altered, amended or repealed, or the Charter in this respect has been superseded. The underlying theory, however, on which the initiative and referendum is established under the Constitution, is far different from a change of the Charter. In the one case, it is the effect of an act entirely apart from the Charter, which causes the disappearance of the initiative and referendum under the Charter. In the latter case a change can result only from exercise of a power to change found in the Charter; that is, in the Act of the Legislature creating and establishing the municipal corporation; and no such power exists under the Charter of Portland.

The situation is not unlike that which exists in the distribution of the functions of the Federal and State govern-

ments.   Given a field of activity in which the Federal government may exercise power, it may remain proper for the State to occupy the field until the Federal government exercises the power.   At that point, the State must retire.   No action by the State produces the result.   No amendment of its law is necessary.   A superior power has undertaken to act, and the lesser power must give way.   For example: in interstate commerce, see *Penn. R. R. Co.* v. *Public Service Comm.*, 250 U. S. 566, 63 L. Ed. 1142, 40 U. S. Sup. Ct. 36, 11 *Am. Jur.* 25.   So here, the City Council had and exercised the right, wholly apart from the Charter, to establish the initiative and referendum effective upon ratification by the voters.

That the Legislature by specific authority of the Constitution may provide a uniform system of initiative and referendum in cities which would supersede the "city ordinance" does not alter the nature of the "home rule" in initiative and referendum under the Constitution.

We may say (1) without any constitutional provision the Legislature has full authority to create initiative and referendum in cities by charter, (2) with the constitutional provision "home rule" in initiative and referendum is granted to the cities which upon its exercise will supersede the charter, and (3) under the constitutional provision the "home rule" in initiative and referendum may be superseded by a uniform method through legislation.

That the "city ordinance" differs from the initiative and referendum under the Charter is not material.   Portland has not changed its Charter.   It has established the initiative and referendum under the Constitution.

We come then to a test of whether the "city ordinance" did establish the initiative and referendum under the Constitution.   Does the undoubted fact that it is less broad in scope than the initiative and referendum under the Charter

destroy its validity? Does the "city ordinance" establish the initiative and referendum within the meaning of the words in the Constitution or, if there are terms inconsistent with the initiative and referendum, may they be declared null and void, leaving an effective initiative and referendum in operation?

As we have seen, the "city ordinance" or what we may call the "constitutional initiative and referendum" is less broad in scope than the "charter initiative and referendum." The "city ordinance" provides the initiative and referendum in regard not to all of the municipal affairs but to certain of the municipal affairs. The constitutional language reads, "in regard to its (the city's) municipal affairs."

Must a city in exercising "home rule" establish an initiative and referendum covering all of its municipal affairs? We think not. The Constitution does not place limitations upon the minimum but upon the maximum scope of the initiative and referendum. The limitation is that the initiative and referendum must not be established in matters which are not municipal affairs.

The court in the Bangor case of *Burkett, Attorney General* v. *Youngs et al.*, 135 Me. 459, 199 A. 619, held that mandamus did not lie to compel a referendum upon an appropriation resolve. The court said on page 464: "The Bangor City Council established the initiative and referendum. The ordinance was ratified at a popular election on December 7, 1931. It appears to have been retained in 1935. This right of initiative and referendum was necessarily restricted to 'municipal affairs.' "; and on page 466: "The referendum, as applied to municipal affairs, affects only those ordinances and resolves that are municipal legislation."

If the city chooses to limit the operation of the initiative

and referendum to a selected segment of municipal affairs by inclusion or exclusion, we see no objection to such course. The right to "home rule" should be broadly construed.

It becomes unnecessary to discuss at length the limitations in the "city ordinance." Sufficient it is to say that it does not appear that any matters *not municipal* are by its terms subject to the initiative and referendum.

The "city ordinance" duly established and ratified provides then a limited initiative and referendum in regard to municipal affairs. Is any invalidity disclosed in the machinery adopted which would require a determination that it is not a valid system under the Constitution?

At the outset we find no defect in the provision that the ordinance becomes effective thirty days after ratification by the voters. The Constitution says only that it "shall not take effect until ratified" by the voters. It does not say that the ordinance must immediately become effective. The thirty-day period is not an unreasonable length of time in which to place a new ordinance in effect. In our opinion this provision of the "city ordinance" is valid.

There is nothing unusual in the machinery provided for the exercise of the initiative and referendum under the city ordinance with the exception of the committee which we will later discuss.

The pattern follows closely that found in the initiative and referendum in general. We find the first move in the petition signed by a certain number of voters and filed with the City Clerk. There follows a period of thirty days within which the petition is open for signature by voters. The City Clerk then closes the petition and presents it to the city government with verification of the number of valid signatures.

The next move is on the part of the City Council. Under the Charter initiative and referendum, if the valid sig-

natures amount to five hundred or more, the City Council is required to call an election. Under the "city ordinance," if the valid signatures amount to at least 5% of the registered voters as determined at the time of the last-preceding municipal election, the City Council shall call a public hearing within thirty days, and at its first regular meeting thereafter call an election. In each instance the time for the election is to be set by act of the Council within ten days after the call for election is required.

We find nothing unreasonable in the provision requiring 5% of the voters determined as stated, or for a public hearing with the consequent delay in time between presentation and the fixing of a date for the election. Some number of petitioners is always required to start the operation of the initiative and referendum. Whether the number be 500 (as under the Charter) or 1500 (estimated number under the "city ordinance") is a matter of detail. The number, either absolutely or in percentage cannot be said to be so great that it unreasonably prevents the fair exercise of the initiative and referendum. Nor does the provision of a public hearing do more than require that the *City Council* give opportunity for the arguments pro and con on the proposed question. The City Council by action approving the initiated ordinance, for example, may end the necessity of a vote of the people. The public hearing cannot harm, and it may help the petitioners.

There need be no hard and fast rules about the time between petitions and calling of an election. If the thirty-day delay (or longer depending upon the time of council meeting) be considered unreasonable, what time would be proper? Unless provisions of this nature destroy the initiative and referendum, they should and must be left to determination of the City in establishing the initiative and referendum under the Constitution.

Nor is there sound objection to the provision in the "city

ordinance" permitting repeal or amendment of an ordinance adopted under the initiative and referendum by the City Council after five years from its effective date without submission to the voters. It is not questioned that an ordinance adopted under the initiative and referendum may be so repealed or amended by the City Council if the ordinance expressly so provides. To lift the requirement of a vote of the people after five years is no more than a change in detail. If the people desire such a limitation on the initiative and referendum, who may properly object thereto?

There remain three provisions in the "city ordinance" which call for more particular discussion.

*First.* In Section 1, we find the "city ordinance" itself is not subject to the operation of the initiative and referendum therein established. There is no objection to this provision. The *initiative and referendum* under the *Constitution* does not originate with action by the people but by the City Council. The right to establish the initiative and referendum under the Constitution includes the right to alter, amend, or repeal the ordinance by the City Council upon ratification by the voters.

*Second.* The "city ordinance" established a committee in the following language:

"Section 1. The original ten petitioners shall be considered to be a committee representing all the signers to the petition. A majority of this committee shall have full power and authority to withdraw the petition or to stop further proceedings at any time when, in their sole and exclusive judgment, such action is deemed to be advisable. The decision to withdraw or to stop further proceedings shall be in writing, addressed and delivered to the city clerk, and shall be signed by at least six members of the committee."

In signing the petition each voter appoints the original ten petitioners as a committee representing all signers with

the authority quoted above.    (Section 2 of the "city ordinance")

No similar provision whereby the power to stop the operation of the initiative and referendum is given to a committee of the petitioners has been called to our attention.    In principle it is entirely without the intent of the initiative and referendum.    If the people; that is, the voters, are to have the power to legislate in municipal affairs, why we may ask should such power be limited to the judgment of the original ten petitioners, or any petitioners, once the petition has been signed by the appropriate number of qualified voters?

Under the "city ordinance" ten petitioners—the first who cause the petition to be prepared and who sign it—are given the power through a majority to kill at any stage that which 1500—the estimated 5% of the voters—have sought to have submitted to a vote.

A system which compels the voter to leave his great rights to legislate, either directly through the initiative or by the people's veto in a referendum, to the mercy of six out of ten individuals may provide a neat and orderly method for the conduct of business, but it cannot be called the initiative and referendum.

There is no justification for saying the first-ten signers are the most interested citizens or that the citizen, who later signs or indeed who does not sign at all, has not exactly the same interest in the proposal as the original ten.    Must the 1490 or more signers (let alone the remainder of the voters) rely upon the judgment of six whom they did not select, whom they may or may not know, and in whom they may or may not have confidence?

It may well be that conditions may arise under which no one wishes the measure submitted to a vote.    The election expense in such event will be wasted for the outcome is cer-

tain. What manner of provision for withdrawal of the proposal may be reasonably made, we need not determine. It is sufficient for our purposes that the initiative and referendum does not contemplate that the citizen be required to accept the judgment of six of the original ten petitioners, as his agents, in the exercise of the right of initiative and referendum.

The pressures in the exercise of the initiative and referendum must come upon the City Council and upon the voters, and not upon a group of ten whose sole function is to start the petition. Once this act is accomplished, they become neither more nor less than voters who have signed, and they have neither greater nor less right or authority than other signers.

With this provision, the "city ordinance" is not an initiative and referendum established in regard to municipal affairs under the Constitution.

*Third.* The same error appears in the provision for form of the ballot which reads:

> "Section 6. *Form of Ballot.* The ballots used when voting upon such proposed ordinance shall set forth the title thereof in full, together with two brief explanatory statements of not more than 200 words each, one prepared by the City Council and the other prepared by the sponsoring committee. These statements shall be descriptive of the intent and content of the proposed ordinance. The ballot shall also contain the words: 'For the Ordinance' and 'Against the Ordinance.' "

With the fall of the sponsoring committee, the provisions for the brief explanatory statements must fail. To strike out the committee statement, leaving the City Council statement, would be destructive of the intent that the proponents and opponents have like opportunity for a last word on the ballot. We do not say that a provision for an explanatory statement by City Council alone would be invalid. It is not

necessary that we pass upon such an issue for it is not here presented. We do say, however, that to delete the statement of one group would be destructive of the purpose and intent of the provision of the "city ordinance," and hence Section 6, insofar and only insofar as it relates to the explanatory statements, is invalid.

The question now becomes whether the provisions which we have found to be invalid may be separated from the remainder of the ordinance to the end that the "city ordinance" without the committee of ten, or the sponsoring committee, may stand.

The rule has been stated in *Hamilton* v. *Portland Pier Site District et als.*, 120 Me. 15 at 24, 112 A. 836: "Where an unconstitutional and invalid portion of a statute is separable from and independent of a part which is valid the former may be rejected and the latter may stand."

The great and underlying purpose of the City Council and the voters was to establish the initiative and referendum. This purpose should not be defeated lightly from the inclusion of an invalid provision relating to the machinery for its exercise. See *Baxter et als.* v. *Waterville Sewerage District*, 146 Me. 211, 79 A. (2nd) 585.

To say that the City Council would have refused to establish the initiative and referendum without the committee of ten, or that the voters would have refused to ratify the "city ordinance," had not such provision been made, would be in our view to give undue weight to a minor matter of machinery in the operation of the initiative and referendum. The invalid provisions, which, as we have pointed out, destroy the initiative and referendum within the fair meaning of the Constitution, may be readily deleted. The "city ordinance" will then contain adequate and complete terms for the establishment and operation of the initiative and referendum. *State* v. *Robb*, 100 Me. 180 at 194, 60 A.

874. No extension of initiative and referendum in fields not intended will thereby be made. Only a plan to limit the exercise of the initiative and referendum by a method not within its spirit will be removed.

We have then presently effective in Portland a "city ordinance" creating and making effective the initiative and referendum under the authority of the Constitution.

The "proposed ordinance," if submitted to and adopted by the voters, would be a nullity. By action under the Charter —and it is under the Charter initiative and referendum that the petitioners are proceeding—the "city ordinance" cannot be altered or amended. The Charter—the Act of Legislature—gives way, as we have seen, to the Constitution. Portland has adopted the initiative and referendum under the Constitution, and only under the Constitution may the "city ordinance" be changed either by City Council on ratification by the voters or by the Legislature by uniform legislation.

Mandamus will not lie to compel the submission of an ordinance which if ratified would be invalid. *Farris* v. *Colley*, 145 Me. 95, 73 A. (2nd) 37. The peremptory writ will not issue to compel a useless act.

We place our decision upon the grounds given. It may be stated, however, that it is apparent that the "proposed ordinance" is an attempt to establish the initiative and referendum under the Constitution, not by following the path made clear in the Constitution, but by initiation of the "proposed ordinance" under the Charter initiative and referendum.

The "proposed ordinance" commences:

"BE IT ORDAINED BY THE PEOPLE OF THE CITY OF PORTLAND, MAINE.

THAT there be and hereby is established initiative and referendum in the City of Portland in regard

> to its municipal affairs as provided by Article 31, Sections 21 and 22 of the Constitution of the State of Maine."

The "proposed ordinance" is blocked, not only by the "city ordinance," but by the Charter. Assuming the Charter initiative and referendum to be valid, the proposal, if adopted, would in effect amend the Charter. Thus the "proposed ordinance" would not be valid if adopted.

Under the circumstances we are of the view that no costs should be taxed in either case.

The entries will be:

> In the equity case, *bill dismissed.*
> In the mandamus proceedings, *the alternative writ quashed and the peremptory writ denied.*