**In the Matter of Robert R. RICHARDS and Gail L. Richards, Debtors.**

Supreme Judicial Court of Maine.

Nov. 9, 1966.

George P. Limberis, Bangor, for debtors.

Berman, Berman, Wernick & Flaherty, Portland, by John J. Flaherty, Theodore H. Kurtz, Portland, and Edward L. Caron, Biddeford, for Aetna Finance Co.

Gerald S. Cope, pro se.

James R. Flaker, Portland, Charles W. Smith, Saco, for trustee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

WEBBER, Justice.

Pursuant to 4 M.R.S.A. Sec. 57 questions have been certified to the Law Court by the United States District Court for the District of Maine. The matters in controversy stem from petitions for wage earner plans now pending in the Federal Court. The debtors and the trustee have seasonably filed a motion in this court to dismiss the certification proceeding on the ground that 4 M.R.S.A. Sec. 57 is violative of the Constitution of the State of Maine. By agreement the merits with respect to the questions certified were briefed and argued together with the motion to dismiss but decision on the motion must be reached before consideration may be given to the merits.

Art. VI, Sec. 1 of the Constitution of Maine provides: "The judicial power of this State shall be vested in a Supreme Judicial Court, and such other courts as the Legislature shall from time to time establish." Sec. 3 provides: "The justices of the Supreme Judicial Court shall be obliged to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives."

4 M.R.S.A. Sec. 57, dealing with the jurisdiction of the Supreme Judicial Court sitting as a Law Court, provides in pertient part:

"The following cases only come before the court as a court of law: * * * and questions of state law certified by the federal courts.

*   *   *   *   *   *

When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court may, by written opinion, answer."

Although the constitution makes no effort to define "judicial power", it has been assumed that *the Law Court* could not render purely advisory opinions. This view may well have stemmed from and been strengthened by the inference to be drawn from the fact that a carefully restricted right to render advisory opinions was conferred *upon the individual justices* by Art. VI, Sec. 3. In any event, we felt no need to rationalize or elaborate when in LaFleur ex rel. Anderson, Atty. Gen. v. Frost et al. (1951), 146 Me. 270, 276, 80 A.2d 407, we said: "The plaintiffs do not show there is a controversy between the parties by reason of which they are entitled to a judgment. A judgment would be not a declaratory judgment in the proper sense, *but an advisory opinion given without warrant of authority on our part.* 'It is essential that a controversy exist; for otherwise the petition *would seek only an advisory opinion of the Court.*' Maine Broadcasting Co., Inc. v. Eastern Trust & Banking Co. et al., 142 Me. 220, 49 A.2d 224, 225." (Emphasis supplied.) Accepting the premise that neither the Law Court nor any other constituted court in this state has the constitutional authority to render purely advisory opinions, we turn to the more immediate question and consider what factors determine whether or not an action of the court is a proper exercise of "judicial power".

In State v. LeClair (1894), 86 Me. 522, 531, 30 A. 7, 9 (a case involving the issuance of a search warrant by a municipal court clerk) the court had occasion to discuss judicial power in these terms: "No specific or precise definition of 'judicial power' is found in the constitution or laws of the State; but the phrase is commonly employed to designate that department of government which it was intended should 'interpret and administer the laws and decide private disputes between or concerning persons.' * * * By the 'judicial power' of courts is generally understood 'the power to hear and determine controversies between adverse parties and questions in litigation.' Daniels v. The People, 6 Mich.

381. It is the 'inherent authority, not only to decide *but to make binding orders or judgments,* which constitutes judicial power'; * * * Underwood v. McDuffee, 15 Mich. 361." (Emphasis supplied.) It is urged here that the reference to "binding orders or judgments" states an indispensable factor in the definition of "judicial power" which is wholly lacking when questions are answered for a court in another jurisdiction. We do not think our court intended that such an inflexible meaning should be given to its borrowed phrase. In Underwood, the Michigan case from which the phrase was quoted, the issue was whether or not the constitution prevented references by consent. It could hardly be supposed that the Michigan court in 1867 or the Maine court in 1894 were effectively reaching into the future to preclude, for example, the use of declaratory judgments after federal abstention—which would after all be one necessary result of a narrow and inflexible interpretation of the phrase used.

In this connection we note with interest the later development of the Michigan law in the field of declaratory judgments where the same challenges with respect to "judicial power" were proffered. The first enactment of "An Act to authorize courts of record to make binding declaration of rights" in Michigan came in 1919. A divided Michigan court declared it to be unconstitutional in Anway v. Grand Rapids Ry. Co. (1920), 211 Mich. 592, 179 N.W. 350, 12 A.L.R. 26. This was a "pioneer case" in this country. In an exhaustive opinion, Mr. Justice Fellows developed the thesis that the statute sought to compel the court to become the "legal advisers of all seeking such advice * * * in advance of any infringement of their rights * * * and * * * in advance of any existing controversy"; that if proceedings under the statute "do not square with the technical definition of a 'moot case', they possess all of its objectionable characteristics"; and that what amounts to an advisory opinion is not a proper exercise of "judicial power", especially for the reason that "our conclu-

sions could not be made effective by final judgment, decree and process." Thus the first Michigan act died aborning.

Its resurrection however was not long delayed. The new act was passed in 1929 and in it was inserted a provision that made it applicable only to "cases of actual controversies." In Washington-Detroit Theatre Co. v. Moore (1930), 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105, it met and passed the test of constitutionality without dissent. The court made it clear that "a case for declaratory judgment must rest upon an actual controversy, be formally presented with proper parties, and is not a substitute for other regular actions." The opinion carefully distinguishes the situation presented by the grant of powers to the federal courts by the Constitution of the United States limited by Art. III, Sec. 2 to "cases" and "controversies" from that presented by a state constitution which transmits the whole judicial power to the state court unless expressly restricted. In this connection the court said: "This historical argument, however much it may circumscribe a government of granted powers, is not applicable to a sovereign state whose inherent powers enable it to attempt solution of any social problem arising from current conditions, and which may adventure into experiment for the public welfare." Turning directly to "judicial power", the court said in part: "Where an actual controversy exists between parties, it is submitted in formal proceedings to a court, the decision of the court is binding upon the parties and their privies and is res judicata of the issue in any other proceeding in court in which it may be involved, what else can the decision be but the exercise of judicial power?" The court did not regard the granting of consequential relief as an essential factor in determining whether or not an action of the court was an exercise of judicial power. The opinion states: "In many cases of ordinary actions the mere determination of rights by judgment or decree ends the controversy. An execution or order of enforcement is issued at the instance of a party only where

such determination does not suffice. * * * Whether consequential relief be granted upon the original or a subsequent petition, and whether an order of enforcement be had of course or on application, go merely to the practice, *not to the power of the court."* (Emphasis ours.) Rauh v. Fletcher Savings & Trust Co. (1935), 207 Ind. 638, 194 N.E. 334.

We are satisfied that our own concept of the relationship between declaratory judgments and "judicial power" fully accords with that of the Michigan court. Although the constitutionality of our declaratory judgment statute has not been challenged, we had no hesitation in School Administrative Dist. #3 v. Maine School Dist. Comm. et al. (1962), 158 Me. 420, 422, 185 A.2d 744, 745 in declaring rights without granting any consequential relief. We said in part: "The controversy is of sufficient moment to justify a determination thereof by this court. This proceeding will terminate the controversy and remove the uncertainty which now exists in regard to whether the Town of Brooks can legally initiate proceedings to dissolve the District. We believe that the Declaratory Judgment Act was designed to provide a suitable remedy in cases such as this." In retrospect we see here no more than a proper exercise of "judicial power".

We have dealt with the relationship between declaratory judgments and judicial power at length, partly because the problems posed by the certification of questions by federal courts to state courts are very similar to those which have arisen in connection with declaratory judgment statutes. In fact the certification device is but a short step removed from and is a natural outgrowth of the practice of federal abstention to permit the bringing of a proceeding in a state court to ascertain definitively the applicable state law. The state proceeding has frequently been in the nature of a petition for declaratory judgment.

In United Services Life Ins. Co. v. Delaney (1965), 396 S.W.2d (Tex.) 855, the

court had before it a suit for declaratory judgment brought after the Fifth Circuit Court of Appeals had invoked the so-called abstention doctrine. The Texas court declined to take jurisdiction on the ground that the giving of an advisory opinion is not a judicial function. In the opinion of the majority the inability of the Texas court to render final judgment (the Federal Court having retained jurisdiction) would render its opinion no more than advisory. The court said: "If the state court is to entertain a suit for declaratory relief, it must have the power and jurisdiction to settle the controversy *by entry of a final judgment.* * * * The Circuit Court's reservation of jurisdiction to render final judgment renders these proceedings advisory in nature. * * * Actually what we are called upon to do is to answer a question and not render a judgment." (Emphasis ours.) We note with interest that the court gratuitously suggested that "a certified question practice, which in the light of the Texas experience, might be expected to present some attendant and vexatious problems, seems more advisable" * * * even though constitutional amendment may be involved." In United Services three judges dissenting were of the view that a judgment declaring the rights of the parties "in situations where consequential relief cannot be given" was within the "express contemplation" of the Texas Declaratory Judgments Act and was a proper exercise of "judicial power". The dissenting justices contended that the court should act where no federal or fact questions remain unresolved so that under the doctrine of Erie R. R. Co. v. Tompkins (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the final judgment of the state court would be in fact conclusive and further action in the federal court could be only in accordance therewith. The dissenters concluded that "[w]hat is decided by our courts will terminate the controversy between the parties and * * * will be res judicata as to the entire case. Clearly, the judgment will be a decision made in adversary litigation in our courts and will leave nothing for the federal courts to decide." The view thus expressed seems to us to accord with the holdings of Washington-Detroit (supra) and Rauh (supra), both of which were in fact cited and discussed in the dissenting opinion of Mr. Justice Steakley.

A very different approach was taken in the case of Leiter Minerals, Inc. v. California Co. (1961), 241 La. 915, 132 So.2d 845. Here the Supreme Court of the United States ordered abstention to permit resort to the declaratory judgment procedure of Louisiana "to have an interpretation, if possible, of the state statute by the only court that can interpret the statute with finality." The Louisiana Court was of the view that there was no "justiciable controversy" before it and that it was being "called upon to render only an advisory opinion." Nevertheless, without concerning itself at all with constitutional problems, the court proceeded to the merits and declared the rights. As justification for its action the court said: "Our opinion here will not terminate the uncertainty or the controversy existing between the parties to the instant suit. This case is unusual, however, in that the highest court in the land deems it 'advisable' for us to render such an opinion. Therefore, out of respect for, and as a courtesy to, that court, we proceed to do so, in the hope that our opinion will be of some assistance to the United States Supreme Court in its solution of the fundamental question raised in the litigation pending in the federal courts." We note that Leiter was followed in Alabama in United Gas Pipe Line Co. v. Ideal Cement Co. (1965), 277 Ala. 612, 173 So.2d 777 in which the court nowhere alludes to any constitutional difficulty. It may well be that the Constitutions of Alabama and Louisiana present no obstacles to the rendering of a purely advisory opinion, but we are satisfied that once we were convinced that an opinion of ours would have to be so characterized, we would be precluded by the Maine constitution from such action.

We turn now to the only case which has been called to our attention in which the certification procedure itself has been examined as an exercise of "judicial power". In Sun Insurance Office, Ltd. v. Clay (1961), 133 So.2d (Fla.) 735, the court sua sponte raised the constitutional question of its jurisdiction to answer questions certified to it by federal appellate courts pursuant to the Florida certification statute enacted in 1945. The court saw no necessity to discuss its powers in terms of "advisory opinions", "final judgments" or "consequential relief". In holding that it had constitutional sanction to participate in the certification procedure, it rested its position squarely upon the concept of the reservoir of power of the people of a state which may be exercised by its legislature. The court said: "Thus, there is no question but that state constitutions are in no manner grants of power, as is the federal constitution, but are limitations upon the power of the state legislature. *All power not limited by a state constitution inheres in the people of that state.* \* \* \* 'It is a fundamental principle of constitutional law that each department of government, whether federal or state, "has without any express grant, the inherent right to accomplish all *objects naturally within the orbit of that department*, not expressly limited by the fact of the existence of a similar power elsewhere or the express limitations in the constitution." 1 Andrews' American Law (2d Ed.) Sec. 182, p. 221.' "

■■ We conclude as did the Florida court that our participation in the certification procedure will constitute a valid exercise of "judicial power". See Sawyer v. Gilmore (1912), 109 Me. 169, 180, 83 A. 673. We are satisfied that more will be involved than the mere rendering of a purely advisory opinion. The certification by the federal court becomes by the force of our statute the jurisdictional vehicle for placing the matter before the court for its action. M.R.C.P. Rule 76B provides for the procedure to be followed. Parties are before the court and are provided with the opportunity for presentation of briefs and oral argument customary upon appeal. The certification will make it apparent that there is a genuine live controversy between the parties pending in the federal court, a controversy based upon an existing factual situation which will be determined by our response to questions. Such response will be in the nature of a declaratory judgment. This court will treat the judgment which it renders on legal issues tendered in certification proceedings as having the force of decided case law within the courts of this state and as constituting res adjudicata as between the same parties in any subsequent action brought in our courts. We rely upon the doctrine of Erie R. R. Co. v. Tompkins (1938), 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to make our decision and opinion given in answer to questions under this procedure conclusive and determinative in the federal courts with respect to the state of the law in Maine.

In reaching this decision we are heartened by the knowledge that the certification process has been repeatedly hailed as a step forward in resolving some of the problems attendant upon federal abstention. The late Mr. Justice Frankfurter, himself both a student and an architect of constitutional law, had occasion to remark in Clay v. Sun Ins. Office, Ltd. (1960), 363 U.S. 207, 212, 80 S.Ct. 1222, 1226, 4 L.Ed.2d 1170, "The Florida legislature, *with rare foresight*, has dealt with the problem of *authoritatively determining* unresolved state law involved in federal litigation by a statute which permits a federal court to certify such a doubtful question of state law to the Supreme Court of Florida for its decision." (Emphasis ours.) And Mr. Justice Douglas, concurring in England v. Louisiana State Bd. of Medical Exam. (1964), 375 U.S. 411, 434, 84 S.Ct. 461, 475, 11 L.Ed.2d 440 said, "We cannot require the States to provide such a (certification) procedure; but by assert-

ing the independence of the federal courts and insisting on prompt adjudications *we will encourage its use.*" (Emphasis ours.) (See note 73 H.L.Rev. 1368).

We turn now to the specific matter before us and to the questions and the record transmitted to us by the United States District Court. The debtors and trustee vigorously urge that the record is not yet in proper posture for our consideration. They point out that the facts have been neither agreed upon nor found by the court. Although the certification contains a "statement of facts" showing "the nature of the case and the circumstances out of which such questions of law of the State of Maine arise", this "statement" is not and does not purport to be the definitive finding by the court as to what the facts are. That the problem is real as it reaches this court is evidenced by the fact that the parties are far apart in their professed views of what the facts are as to which Maine law must be applied. Moreover, the parties express difficulty in comprehending exactly what is intended by one of the questions propounded, a difficulty which we are inclined to believe stems directly from the unresolved state of the underlying facts.

■ We have had but one previous occasion to respond to questions propounded by a federal court under 4 M.R.S.A. Sec. 57. In that case, Norton v. Benjamin (1966), 220 A.2d (Me.) 248, the facts were agreed upon and since there was apparent no controlling federal question and the constitutionality of the certification process was not challenged, we deemed that our response to questions would be determinative of the controversy and had no hesitation in answering. Our concern in the instant case stems not only from those con-

stitutional considerations which we have discussed above but from the wording of the jurisdictional statute itself. As we construe the statute, it contemplates that our response *will be* "determinative of the cause"—and in fact if this were not so the statute would not satisfy constitutional requirements as we have already indicated. We cannot see that this can ever be so if the facts remain unresolved and in a hypothetical state. The Florida certification statute obviates this difficulty by permitting certification only by federal courts *at the appellate level.* At that level the facts will have been found and established. If we are to participate and yet not render purely advisory opinions, we think it will be incumbent upon us to respond to questions only when it is apparent from the certification itself that all material facts have been either agreed upon or found by the court and that the case is in such posture in all respects that our decision as to the applicable Maine law will in truth and in fact be "determinative of the cause" as the statute conferring jurisdiction upon us requires. Such is not the case here.

It is with understandable reluctance, therefore, that we respectfully decline to answer the questions propounded to us. In the interest of saving time, expense and unnecessary duplication, upon any recertification of questions after determination of material facts, this court would permit the use of any records or briefs already on file here, the same merely to be supplemented as the federal court and the parties may then deem necessary.

The clerk will transmit this opinion to the District Court of the United States, District of Maine. All concur.

So ordered.